Whitaker, Judge,
delivered the opinion of the court:
This case is before the court pursuant to H.R. Resolution No. 490, 84th Congress, 2d Session, in which the court was requested to determine whether plaintiffs have a legal or equitable claim against the United States, and the amount, if any, legally or equitably due thereon.
Plaintiffs claim an overpayment of income taxes for the years 1943, 1944,1945, and 1946 in the amount of $47,714.16, together with interest from the date of payment. This amount was paid by plaintiffs on April 25,1950 in settlement of a suit then pending in the Tax Court of the United States in which the defendant herein alleged net tax deficiencies against the plaintiffs for the years in question of $111,570. The settlement agreement was set forth in stipulations signed by the attorneys for the parties, at their request, and were duly filed in the Tax Court, which on April 5, 1950 entered judgment accordingly.
The Commissioner of Internal Revenue determined these additional taxes against plaintiffs upon a finding that a family partnership entered into in 1943 by plaintiffs and four of their five children could not be recognized for Federal tax purposes. The - plaintiffs now ask us to decide that the Commissioner was in error, that the partnership was bona ■fide and should have been recognized for all purposes, and they further ask that we recommend to Congress that it disregard the settlement, and refund to them the amount they paid pursuant to it.
Clearly the plaintiffs are not legally entitled to recover because a judgment rendered on the merits constitutes an absolute bar to a subsequent action. Southern Pacific Railroad Co. v. United States, 168 U.S. 1; Cromwell v. County of Sac, 94 U.S. 351; and numerous other cases. The fact that the judgment was entered by consent of the parties rather than upon a judicial determination of the controversy *704 is immaterial; it is nonetheless a bar to a subsequent suit on the same cause of action. Lawlor v. National Screen Service Corp., 349 U.S. 322, 327; United States v. Parker, 120 U.S. 89, 95; James v. Commissioner, 31 B.T.A. 712, 720. The rule is founded upon the necessity of according finality to court judgments. The parties, having had the opportunity to litigate their controversy, are conclusively bound by the compromise agreed upon. Their former cause of action is merged into the compromise judgment and is extinguished.
The case of United States v. International Building Co., 345 U.S. 502, 506, is directly in point. That case involved a decision of the Tax Court entered pursuant to a stipulation of the parties. The court stated, “Certainly the judgments entered are res adjudicata of the tax claims for the years 1933, 1938, and 1939, whether or not the basis of the agreements on which they rest reached the merits.” A compromise settlement has also been held to bar the government, after settling its claim against a taxpayer by stipulation in the Tax Court, from collecting additional taxes. Lenny v. Williams, 143 F. Supp. 29.
The plaintiffs, however, claim that they are equitably entitled to recover these taxes on the grounds that the stipulations were entered into under financial stress, which they say amounted to duress, and due to a mutual mistake of law. We do not believe either of these allegations warrant the setting aside of the settlement agreement.
The fact that plaintiffs did not have sufficient funds immediately available to pay the entire tax in the event they lost their suit, and, therefore, entered into the settlement, does not now give them a right to claim that the settlement was entered into under duress. It is well settled that the pressure of financial difficulties is not sufficient to constitute legal duress. Cf. Burnet v. Chicago Railway Equipment Co., 282 U.S. 295; Shaw & Truesdell Co. v. United States, 1 F. Supp. 834. This is especially so where no showing is made that the other party took advantage of opponent’s financial condition to assert unreasonable demands. There is no showing here that the defendant’s claim of $111,570, *705 which was settled for $47,714.16, was not asserted in good faith.
Nor do we think that the fact that there was uncertainty in the law of family partnerships in 1950 is sufficient to now void the stipulations duly executed by the parties. In Commissioner v. Culbertson, 337 U.S. 733, decided before the settlement was agreed upon, the Supreme Court had said that the test was the bona pies of the partnership. This, of course, presented a question of fact, and it was uncertain how it would be decided, since no specific tests had then been prescribed for determining the bona /ides of the partnership agreement. But certainly this uncertainty is not sufficient to void the settlement. Compromises are made only because of the uncertainty of the outcome of litigation. Having elected not to risk litigation, but to settle for considerably less than the amount demanded by defendant, they are foreclosed from litigation now when they consider conditions more favorable to them.
We think plaintiffs are equitably estopped from asserting a demand for the return of money they paid in consideration of the waiver by the defendant of a demand for more than twice what plaintiffs paid. Guggenheim v. United States, 111 C. Cls. 165, certiorari denied, 335 U.S. 908.
We conclude, therefore, that plaintiffs are not entitled to recover either at law or in equity.
This opinion, together with the findings of fact which follow, will be certified to the Congress pursuant to House Resolution No. 490, 84th Congress, 2d Session.
It is so ordered.
Brtan, District Judge, sitting by designation; Laramore, Judge; MaddeN, Judge, and JONES, Chief Judge, concur.
FINDINGS OP PACT
The court, having considered the evidence, the report of Commissioner Wilson Cowen, and the briefs and argument of counsel, makes findings of fact as follows:
1. Plaintiffs’ petition was filed pursuant to House Resolution 490, 84th Congress, 2d Session, which was adopted on May 9, 1956, and provides as follows:
*706 Resolved, That the bill (H. E. 6365) entitled “A bill for the relief of Edward E. Maher,” together with all accompanying papers, is hereby referred to the United States Court of Claims pursuant to sections 1492 and 2509 of title 28, United States Code; and said court shall proceed expeditiously with the same in accordance with the provisions of said sections and report to the House of Eepresentatives, at the earliest practicable date, giving such findings of fact and conclusions thereon as shall be sufficient to inform the Congress of the nature and character of the demand, as a claim legal or equitable, against the United States, and the amount, if any, legally or equitably due from the United States to the Claimant,
H. E. 6365 reads in part as follows:
* * * % #
That the Secretary of the Treasury is authorized and directed to pay, out of any money in the Treasury not otherwise appropriated, to Edward E. Maher, Dallas, Texas, the sum of $47,699.07 plus interest compounded annually at the rate of 6 per centum per annum from April 25, 1950, to the date of payment hereunder. The payment of such sum shall be in full settlement of all claims of the said Edward E. Maher and of Genevieve Maher against the United States for refund of income taxes which the said Edward E. Maher was required to pay for the years 1943, 1944, 1945, and 1946 as a result of allegedly wrongful deficiencies assessed against him and the said Genevieve Maher * * *.
2. Plaintiffs, husband and wife, are residents of Dallas, Texas, and have been in the automobile business as Ford agents and dealers for approximately 40 years. They moved from Eanger, Texas, to Dallas in 1930 and there operated their Ford agency under the name of “Ed Maher, Inc.”. About October 31, 1941, plaintiffs dissolved the corporation “Ed Maher, Inc.” but continued to operate the Ford agency as a sole proprietorship until about March 31, 1943.
In dissolving the corporation and determining the form in which the business should be operated thereafter, plaintiffs consulted E. E. Burnett, a certified public accountant who specializes in tax work. Since 1934, Mr. Burnett has performed auditing services and prepared tax returns for plaintiffs and other members of their family.
*707 3. In March 1943, plaintiffs Edward Maher and wife, Genevieve Maher, were each 52 years of age and were the parents of five children, four boys and one girl, whose names are and whose ages were at that time as follows:
Edward R., Jr_ 26
Thomas H_ 24
Louis J_ 21
Rita M_ 19
Martin_ 15
4. As soon as the three older sons were able to drive a car or truck, they began working in the automobile agency, and plaintiffs considered that their sons would later enter the business and become a part of it. In 1943, plaintiff Edward Maher learned from a close friend who operated a Chevrolet agency directly across the street from plaintiffs’ agency that the Chevrolet dealer had entered into a partnership with his daughter and son and had employed John Davis, an elderly lawyer who was then United States Commissioner in Dallas, to draft the necessary papers. After consulting with Mr. Davis, plaintiffs instructed him to prepare documents by which one-fifth of 49 percent or a 9.8 percent interest in all the real and personal assets of the Ford agency and business woidd be conveyed to each of the four older children, and 60.8 percent of the ownership in the business would be retained by plaintiffs.
On March 31, 1943, plaintiff Edward Maher executed and acknowledged a document prepared by Mr. Davis and entitled “Gift Deed and Bill of Sale”. It provided in pertinent part as follows:
whereas Edward R. Maher of Dallas, Dallas County, Texas, engaged in the Mercantile business has assets and property, real and personal of a net value as of March 31st, 1943 of $133,202.00 owned by the said Edward R. Maher and wife, Mrs. Genevieve Maher one-half thereof or $66,601.00 in values belonging to and owned by Edward R. Maher and one-half thereof or $66,601.00 in values belonging to and owned by Mrs. Genevieve Maher, wife of the said Edward R. Maher and the said Edward R. Maher hereby relinquishing to his said wife all interest, claims and demands against the $66,601.00 in values owned by Mrs. Genevieve Maher as her sole and separate property so that now *708 the said Edward E. Maher now has and owns only one-half of said properties and business valued at $133,-202.00 or the net value of $66,601.00 as of March 31st, 1943 and
whereas, it is the desire of the said Edward E. Maher to make a gift to his sons Edward E. Maher, Jr. and Thomas H. Maher, out of his properties and business above described as being of the net value as of March 31st, 1943 of $66,601.00 in values as being his property and estate, said gift to his son Edward E. Maher, Jr. out of said $66,601.00 being of the value of $13,053.79 and said gift to his son Thomas H. Maher out of said $66,601.00 being of the value of $13,053.79, so that said Edward E. Maher, Jr. and Thomas H. Maher, each shall be a partner in the business and properties herein conveyed, to the extent of an undivided one-fifth interest in and to said properties and business, the said sum of $13,053.79 being one-fifth of forty nine per cent of the total value of said property and busmess on March 31st, 1943, $133,202.00 and the real estate in which the said two named children, Edward E. Maher, Jr. and Thomas H. Maher shall have an interest being described as lying and being situated in Dallas, Dallas County, Texas and more particularly described as follows to-wit:
Following the property description, the document further provided:
NOW, THEREFORE, KNOW ALL MEN BT THESE PRESENTS that i, Edward E. Maher of Dallas County, Texas in consideration of the love and affection which I bear to my sons Edward E. Maher, Jr. and Thomas H. Maher do hereby give, grant, confirm and convey unto the said Edward E. Maher, Jr. and Thomas H. Maher each all and singular the goods and chattels and do give, grant and confirm unto the said Edward E. Maher, Jr. and Thomas H. Maher each, an interest in a certain tract of land described above by metes and bounds together with all and singular the hereditaments and appurtenances thereunto belonging or in anywise appertaining to the extent and only to the extent of $13,053.78 each, out of said $66,601.00 left in me out of the sum total of $133,202.00 in total values as of March 31st, 1943 covering the then value of all personal property owned and held and the real estate herein described.
And which gift of $13,053.78 in values to each of said two named children, Edward E. Maher, Jr. and Thomas *709 H. Maber, is hereby accepted by each of said named children.
to have AND to hold the above described property, goods, and chattels and interest in the personal property and real estate described unto the said Edward E. Maher and Thomas H. Maher, each their heirs and assigns forever.
The document was filed for record in Dallas County on July 15,1943.
5. On March 31,1943, plaintiff Genevieve Maher and her husband executed and acknowledged a gift deed and bill of sale prepared by Mr. Davis and duly recorded in the Deed Eecords of Dallas County on July 15, 1943. The document recited that Mrs. Maher owned an undivided one-half interest in the assets of the business and contained a provision by which Edward E. Maher relinquished and quitclaimed to her as her separate property an undivided one-half interest in such assets. The instrument further recited (in the same language used in the document quoted in the preceding finding) that Genevieve Maher desired to give her son, Louis J. Maher, and her daughter, Eita Maria Maher, each an undivided one-fifth interest in 49 percent of the assets, so that each would be a partner in the business. In the same document, Genevieve Maher, joined by her husband, conveyed to Louis J. Maher and Eita Maria Maher an interest in the real and personal property of the business to the extent of $13,053.79 in value for each, being 9.8 percent of $133,202, the total stated value of all the real and personal property.
6. The above-described deeds of gift and bills of sale were made pursuant to plaintiffs’ plan to retain ownership of 51 percent of the assets of the business and to divide the remaining 49 percent equally among the five children. However, at that time, Martin Maher, the youngest child, was only 15 years of age and his share was held in abeyance with the intention that it would be given to him when he attained maturity. As will hereinafter appear, the business had been incorporated when Martin became of age, and at that time he was given stock in the corporation equivalent in value to the stock issued to the older children in exchange for the 9.8 percent interest which was given each of them on March 31, 1943.
*710 7. Among the reasons which induced plaintiffs to convey a 9.8 percent interest in the Ford agency to each of their four children was plaintiffs’ desire to keep the ownership of the business in the Maher family in the event of the death of plaintiffs. The most valuable asset owned was the contract plaintiff Edward E. Maher held with the Ford Motor Company. As long as he remained sole owner, the contract would expire with his death, but he felt that if he had partners in the business who were competent to carry it on after his death, the Ford Motor Company would in that event transfer the contract to the surviving partners.
8. In March 1943, Edward E. Maher, Jr., was teaching in the Jesuit High School in Dallas. He had graduated from high school and completed the first year of college at St. Mary’s School in La Porte, Texas, where he had been ordained as a sub-deacon in the Catholic Church. Prior to 1943, he had worked in the automobile agency in the summertime consolidating and correlating records and doing office work. In March of 1943, he was undecided as to whether he would continue his studies for the priesthood or enter the business world. His father offered him a substantial salary if he would serve as office manager for the business, but he continued teaching and coaching in high school. If Edward, Jr., had made up his mind in 1943 to enter the business world, Edward Maher intended to join with him in conducting the automobile business. In 1951, Edward, Jr., attended Xavier University in Cincinnati, Ohio, and thereafter completed his college studies at Fordham University, New York. He was ordained a Catholic Priest in 1953.
9. Thomas H. Maher was inducted into the Navy in February 1942, but was permitted to complete his law course and received his law degree in August of 1942. From September 1942 until he was assigned to active duty in the Navy in November 1942, he was employed for approximately 6 weeks in a law office in Dallas. He received a commission in the Navy in March of 1943, came home, and was married at that time. While he was in Dallas, his father told him that he proposed to make him a part owner of the business and requested that he enter the business on termination of service with the Navy instead of practicing law. Thomas *711 agreed that he probably would enter the business on his discharge from military service, because he did not intend to practice law. Thomas was in the Navy in 1943, 1944, and until he returned to Dallas in the latter part of 1945. Since it was known in March 1943 that Thomas was to serve in the Navy, plaintiff Edward E. Maher did not intend to join with Thomas in the conduct of the automobile business until the latter returned from military service. Upon his discharge from the Navy in 1945, Thomas entered the business and has since been engaged in the automobile business in Dallas.
10. Louis J. Maher graduated with a degree in business administration from Spring Hill College in Mobile, Alabama, in 1942. Thereafter he entered the Navy Air Corps and was assigned to duty in Pensacola, Florida, on March 8, 1943. He remained in the Navy until June 1946, when he returned to Dallas and entered the business. Since Louis was in the Navy Air Corps in 1943, it was not intended that he would be active in the business or that he would join with plaintiffs in the conduct thereof until he returned from military service.
11. Eita Maria Maher attended college in New Eochelle, New York, for 4 years, including 1943, 1944, and 1945. She was away from Dallas, except during Christmas holidays and in the summers. She married in May of 1945. After she finished high school, she did some typing in the automobile agency. She was not active in the business from 1943 to 1946, but did perform some work in the agency during summer vacations. Since she was in college in 1943, plaintiffs did not intend to have her join with them in the conduct of the business at that time but anticipated that she would enter the business at some future date. As stated, she is married and now lives in Dallas.
12. Plaintiffs did not consult with or obtain advice from E. E. Burnett, their accountant, regarding the deeds of gift and bills of sale in favor of the children or the tax consequences of the formation of a family partnership. In September 1943, plaintiff Edward E. Maher told Mr. Burnett about the gift deeds and showed the documents to him. Mr. Burnett advised that an attorney be employed to prepare a *712 formal partnership agreement and that the books be reworked to reflect capital accounts for plaintiffs and each of the four children as of March 31, 1943. There had been no break in the books until the change recommended by Burnett was made in September 1943.
At Burnett’s suggestion, George S. Atkinson, a Dallas attorney specializing in tax cases, drafted a partnership agreement on the basis of suggestions made by Edward B. Maher and Mr. Burnett. At that time, Louis and Thomas were in the military service, Bita was in school at New Bochelle, New York, and Edward, Jr., was teaching in a high school in Dallas. None of the four children made suggestions as to the contents of the agreement. It was entered into by plaintiffs and the four children in October 1943. The document was signed by plaintiff Edward B. Maher and by Edward, Jr., at Dallas on October 25, 1943, and thereafter mailed to Thomas, Louis, and Bita for their signatures.
The agreement of partnership, in evidence as plaintiffs’ exhibit 5, referred to the deeds of gift to the four older children and stated that plaintiffs and the four children were then and had since March 31, 1943, been partners in the automobile business operating under the name of “Ed Maher, Authorized Ford Dealer”; that the plaintiffs owned 60.8 percent interest in the assets and that Edward, Jr., Thomas, Louis, and Bita each owned a 9.8 percent interest therein; that Edward B. Maher was managing the business and should be allowed a reasonable salary; that reasonable salary allowances would be made for partners who later became active in the business; that the partners would share in the profits and losses of the business from and after March 31, 1943; that the partnership books, effective as of March 31, 1943, would reflect the interests of the partners, and that the records and accounts would be maintained on a fiscal year basis; that in the event of the death of any of the partners, the survivors would have the option to purchase the interest of the deceased partner at book value, and that in the event Bita married, the remaining partners would have the option to purchase her interest at book value, *713 provided the option, was exercised before the expiration of 6 months from the date of her marriage.
13. On the same dates on which they signed the agreement of partnership, plaintiffs and the fonr children executed and thereafter filed with the County Clerk of Dallas County an assumed name certificate, certifying that they owned and conducted the business operated under the firm name of “Ed Maher, Authorized Ford Dealer”. The business was operated under that name until the partnership was dissolved and a corporation formed on July 1, 1946.
14. On March 6,1944, the plaintiff Edward E. Maher filed a gift tax return reflecting gifts of $11,185.12 as of March 31, 1943, each to Edward E. Maher, Jr., and Thomas H. Maher. On or about the same date, the plaintiff Genevieve Maher filed a gift tax return reflecting gifts as of March 31, 1943, of $11,185.12 each to Louis J. Maher and Eita M. Maher. The returns stated on their face that the fair market value of the one-half interest in the business held by plaintiff Edward E. Maher was $57,066.94 and the one-half interest held by plaintiff Genevieve Maher was $57,066.94, and that the gift to each child was 19.6 percent of each one-half interest (i. e., 9.8 percent in the business as a whole). No gift tax was due according to the computations on the returns, and none was paid by the parties.
15. Partnership returns of income (Form 1065) were filed in the name of Ed Maher, Authorized Ford Dealer, for the following periods, in which income from the automobile business in the amounts indicated was reported.

Ordinary

Period Net Income

April 1, 1943 to October 31, 1943_$55,101. 05
November 1, 1943 to October 31, 1944_118, 571. 82
November 1, 1944 to October 31, 1945_ 145, 089. 64
November 1, 1945 to June 30, 1946_ 157, 538.04
These returns reflected a division of income between the plaintiffs and the four children on the basis of 60.8 percent to the plaintiffs and 9.8 percent to each of the four children.
16.The gift tax and partnership income tax returns referred to above, as well as the individual income tax returns for the plaintiffs and each of the four children, were pre *714 pared by Mr. Burnett. The income tax liability of plaintiffs and the four children were paid through checks drawn by Edward E. Maher on the bank account of the business. The payments made were charged to the personal account of each of the partners and later charged to their investment accounts.
17. Plaintiff Edward E. Maher managed the automobile business from March 31, 1943 to July 1, 1946. None of the four children was authorized to sign checks on the business bank account. However, during that period, each of the four children was free to sell or otherwise dispose of his 9.8 percent interest in the business.
18. During the years 1943 to 1946, the automobile agency had a substantial amount of paid-in capital, which was important and necessary to the operation of the dealership and the production of income. Although money could be borrowed for the purchase of automobiles, a substantial sum was needed for keeping a stock of parts and for carrying on other activities.
The ability of the manager of an automobile dealership is also an important element in the production of income. During the 3-year period mentioned above, Edward E. Maher was paid a salary of $500 per month as manager. This amount was determined after he had discussed the matter with Mr. Burnett and talked with Mrs. Maher regarding the amount needed for their living expenses. The amount of his salary was not discussed with any of the children. The salary paid him was a very modest one, and he felt that he earned many times that amount during the years in question.
After the business was reincorporated on July 1,1946, his salary was raised to the rate of $36,000 per year and 9 months thereafter, it was increased to $60,000 per year. The salaries paid him were related to the volume of business done and the income from the business. During the war years, dealers were unable to obtain new cars. War restrictions were removed, and the manufacturers began making new cars for sale to dealers in 1946. As a result, there was a substantial increase in the volume of business done by “Ed Maher, Authorized Ford Dealer,” and thereafter by the corporation organized July 1, 1946.
*715 19. On July 1, 1946, the Ford agency and business was incorporated under the name of “Ed Maher, Inc.”. Stock in the new corporation was issued on the basis of 9.8 percent interest to each of the older children and the remainder to plaintiffs. In 1950, when Martin Maher became of age, he received stock covering a 9.8 percent interest in the corporation. The four older children have since July 1, 1946, served as officers or directors of the corporation. Since 1950, Martin has also been a director.
The decision to reincorporate the business was made after plaintiffs consulted with their tax advisers and in light of the fact that on September 28, 1948, a revenue agent, after examining the partnership returns for the years 1943 and 1944, had made a report in which the agent determined that no valid partnership existed for income tax purposes and that plaintiffs were taxable on the entire net income realized from the business. Plaintiffs decided that it was necessary to reincorporate the business in order to eliminate any question as to the legality of the ownership by the four children of the interests in the business previously conveyed to them.
20. In the individual income tax returns filed by plaintiffs and the four older children for the years 1943, 1944, 1945, and 1946, the respective tax liabilities were computed on the basis that plaintiffs and the four children were partners in the business conducted under the name of “Ed Maher, Authorized Ford Dealer”; that plaintiffs owned a 60.8 percent interest in the business, and that Edward E. Maher, Jr., Thomas H. Maher, Louis J. Maher, and Eita Maria Maher each owned a 9.8 percent interest therein. As stated above, a revenue agent first examined the returns for the years 1943 and 1944 on or about September 28,1945. About February 6, 1948, a revenue agent reported the results of his examination of the returns for the years 1945 and 1946. The Internal Eevenue Service determined that the partnership should not be recognized for income tax purposes and that the entire net income during the 4 years was taxable to plaintiffs. Official notices of the deficiencies asserted by the Internal Eevenue Service were mailed to plaintiffs on November 22,1946, for the years 1943 and 1944, and on June 4, 1948, for the years 1945 and 1946. In the examination *716 of the returns and in several conferences held prior to the issuance of the notices of the deficiencies, the representatives of the Internal Revenue Service followed the normal procedure. The total amount of the deficiencies shown in the notices was $185,433.81, exclusive of interest.
21. On February 13, 1947, plaintiffs each filed petitions in the Tax Court of the United States for the review of the deficiencies determined by the Internal Revenue Service for the years 1943 and 1944. Similar petitions with respect to the deficiencies asserted for 1945 and 1946 were filed on August 23, 1948. In their petitions, plaintiffs sought findings that they were each taxable on only one-half of 60.8 percent of the income of the business conducted under the name of “Ed Maher, Authorized Ford Dealer” on the ground that a valid partnership existed between plaintiffs and the four older children. In the alternative and in the event that it was held that no partnership existed, plaintiffs alleged that they were entitled to deductions on their individual income tax returns of 39.2 percent of the reasonable rentals of fixed assets used in the business and owned by others and were also entitled to deductions on their individual income tax returns on amounts accruing as interest payments on a net investment of 39.2 percent of the business owned by others.
22. Plaintiffs employed two attorneys, George S. Atkinson and Thomas B. Rhodes, as well as their accountant, E. R. Burnett, to advise them regarding the proposed income tax deficiencies and to represent them in the suits filed in the Tax Court of the United States. Mr. Atkinson is and was a reputable lawyer with long experience in the practice of tax law in Dallas and is regarded as one of the outstanding tax attorneys in that city. Mr. Rhodes was and is an able young lawyer who is well versed in tax law. As previously stated, Mr. Burnett is a certified public accountant who has specialized in tax work, enjoys a splendid reputation as a tax representative, and has had many cases before the Internal Revenue Service in Dallas. Plaintiffs have agreed that they were well represented in the Tax Court proceedings.
*717 23. In the Tax Court proceedings, the Internal Revenue Service was represented by J. Marvin Kelley, then counsel in charge of the Dallas office and now regional counsel for the Dallas region of the Internal Revenue Service. After plaintiffs’ petitions were filed, a number of conferences were held by Mr. Kelley with plaintiffs’ representatives for the purpose of effecting a compromise settlement.
On December 9, 1948, Mr. Atkinson requested that the Tax Court not place plaintiffs’ cases on the February 19, 1949, trial calendar of the court in Dallas, because the Supreme Court had granted certiorari in the case of William O. Culbertson v. Commissioner from the decision of the Circuit Court of Appeals (168 F. 2d 979). Mr. Atkinson stated that both he and Mr. Kelley thought that the opinion of the Supreme Court in the Culbertson case would have an important bearing on plaintiffs’ cases and might provide a basis for settlement.
24. While the settlement negotiations were in progress, George S. Atkinson, plaintiffs’ attorney, sent a letter to plaintiffs regarding the four suits pending in the Tax Court. The letter was dated November 10,1949, and read as follows:
Reference is made to our discussion of the above mentioned matters in this office on November 1.
As instructed by you, we have made proposition to Mr. Chapman of the Technical Staff and Mr. Kelley, attorney of the Chief Counsel’s office, who is the trial attorney in the above mentioned cases, for settlement of the above mentioned matters on the basis of recognition of the partnership in so far as you, Thomas H. Maher and Louis J. Maher are concerned and for allowance of deductions by the partnership totaling $600 per month rental on account of the use by the partnership of the assets of Rita Maher Kelliher and Edward R. Maher, Jr., this being $300 per month each. We have been advised by Mr. Kelley that he will recommend settlement of these cases on the basis of recognition of the partnership in so far as you, Thomas H. Maher and Louis J. Maher are concerned, but will not recommend the allowance of any deductions for rent on account of use of the property. This was to be expected. Mr. Kelley, of course, does not know whether or not he can get his recommendation approved.
The situation with which we are confronted is that a written partnership agreement was actually signed in *718 the year 1943; that prior to that time none of your children had been active in the business (and certainly not active as partners) except that they did some work during vacation time at odd intervals; that Thomas EL Maher and Louis J. Maher were in the Navy during all of 1943, all of 1944, and that Thomas H. Maher came back and became active in the business in December, 1945; that Louis J. Maher came back from the service and became active in the business in June 1946; that during a portion of this time Rita Maher Kelliher was in school and she married in May 1945 and she has never at any time been active in the business during the years 1943 to 1946, inclusive, except that she did some work during vacation; that Edward R. Maher, Jr., has never rendered any service to the business except during the summer; he has devoted his time to teaching and coaching since September 1941. All of the children at certain times have been on the payroll, but pi’incipally these services were rendered during the period in question only during summer vacation periods.
It appears to us that as to Rita Maher Kelliher and Edward R. Maher, Jr., there is but an extremely slight chance that the partnership will be recognized. It appears that as to Thomas H. Maher and Louis J. Maher, there may have been a valid partnership between you and these boys which terminated when the corporation was formed on July 1, 1946. However, in any event there will be a serious question as to when the partnership began. In view of the fact that these boys were not partners before their entry into the Navy and did not pretend to be partners and you did not hold them out as partners, the Tax Court could in the light of recent decisions very handily hold that the partnership as to Thomas H. Maher began if at all in 1945 when he returned from the Navy and that it did not exist before; and that as to Louis J. Maher, the partnership began if at all when he returned from the Navy in 1946 and that it did not exist before.
You can very readily see that such a holding by the Tax Court would give you and Mrs. Maher very little tax relief.
In addition to the above, the Court could well hold that as to those not recognized as partners, there would be no basis for the allowance of a deduction for rental to the partnership for use of their property. By this we mean the Tax Court could disallow all rentals on the basis that you had in reality not parted with the custody and control of the assets to which they were given *719 a formal “gift deed and bill of sale” in 1843. It seems that if the Tax Court should decide these cases in this manner, as it is a question mainly of fact under the Culbertson decision, there would be only a slight chance to reverse the Tax Court in the U. S. Court of Appeals.
It will be recalled that when you were in the office on November 1, you stated that there had been no cases decided in which the Tax Court had refused to recognize a partnership and had taxed all the income to the owner who had held the property prior to the formation of the partnership, where there had been a formal transfer of title to the would-be partners. In this connection, we beg to advise you that there have been many cases in which not only has the partnership not been recognized where actual title was placed in the alleged partners, but also the Tax Court has refused to allow any rental deductions represented by payments made or accrued to the holders of legal title. Attached hereto as Exhibit “A” will be found a partial list of cases so holding.
It will also be recalled that in our conference on November 1, you took the position that income from the automobile business should all be considered attributable to the investment or assets. At that time we advised you that personal services are a vital factor in producing income in the automobile business. As sustaining us in our position on this proposition, we desire to cite to you the case of Claire L. Canfield v. Commissioner, 7 TC 944 (1846), wherein it was held that the personal service element had to be recognized to the extent of 75% of the income and that capital had to be recognized to the extent of the remaining 25% in an automobile agency and business. In this case an attempt was made to create a partnership between husband and wife that would be recognized for tax purposes. The wife had contributed about % of the capital to the partnership. The Tax Court held there was no partnership, but that there was a business arrangement, wherein the wife had made a contribution to the operating capital and that the capital was responsible for only 25% of the income and that personal services were responsible for 75% of the income. Therefore, the wife was held to be entitled to share in the income to the extent of only 14 of 25%. Now in your case, if this same principle were applied, and we see no reason why it could not apply, it is easy to see that very little tax relief would be afforded if the investment is given credit for only 25% of the earnings and personal services given credit for 75% of the earnings.
*720 Since the last conference with you in our office, we have with Mr. Burnett carefully reviewed all the facts in the cases in the light of recent court decisions, including the decision of the Supreme Court in the Culbertson case. As a result of our review of the facts, we have reached certain conclusions and opinions with regard to your cases which are as follows:
(1) We believe that the decision of the Supreme Court in the Culbertson case has fallen far short of solving the problems in these partnership cases and has in all probability left the partnership cases, so far as the Tax Court is concerned in no better shape than it was prior to the Court’s decision in the Culbertson case.
(2) We are of the opinion that a settlement on the basis as proposed for recommendation by Mr. Kelley, while not as good as we had hoped for, is a fair and good settlement in the light of the facts and pertinent decisions of the courts in other cases.
(3) We consider it impossible to forecast what decision might be rendered in these cases by the Tax Court other than to say that in all probability the Court will not recognize Bita Maher Kelliher and/or Edward B. Maher, Jr., as partners and the Court might not recognize Thomas H. Maher and/or Louis J. Maher at all or it might recognize them as partners only from the respective times they came back from the Navy.
(4) In conclusion, unless it is your desire to gamble on a more favorable decision of the Court than the settlement proposed and at the same time to gamble on losing these cases 100% or almost 100%, we recommend that the tentative proposal for settlement of the cases by the allowance of Thomas H. Maher and Louis J. Maher as partners be accepted and stipulations filed in order that the Court may render decisions in accordance therewith.
This suggestion on Mr. Kelley’s part as to a basis for settlement which he would recommend is, of course, tentative and we do not know, nor does Mr. Kelley know, whether or not a settlement of this kind can be made at all, but of course he would like to know whether or not it is acceptable to the taxpayers before asking for approval by the Head of the Technical Staff and the Division Counsel.
It should be borne in mind that at the conference on August 29, 1947, Mr. J. Marvin Kelley advised us that these cases could be settled only by payment of the entire deficiencies determined. This was after Mr. Kelley had won the case of Culbertson v. Commissioner (June *721 24, 1947), 6 TCM 692. As you know, this case was later reversed in the U. S. Court of Appeals, 48-2 ITSTC Par. 9324, and still later reversed and remanded. We have discussed the language of the U. S. Supreme Court used in its opinion. Since the Culbertson case was remanded, it has not been decided by the Tax Court and we do not know whether the Tax Court will recognize any of the Culbertson children as partners or not.
You are requested to give serious consideration to what we have set out herein and decide what you wish to do. After coming to some decision in these matters, we would like to meet with you at an early date for the purpose of further discussing these matters.
We are in agreement with Mr. Burnett on this proposition and on the contents of this letter.
Attached to the letter was a list of 14 cases in which the Tax Court had refused to recognize the existence of family partnerships and had taxed all the income to the owners prior to the formation of the partnership.
25. In December 1949, a settlement was agreed upon and set forth in stipulations thereafter signed by the attorneys for the parties and filed in the Tax Court on April 3,T950. On April 5, 1950, decisions were entered by the Tax Court determining deficiencies of income tax due from the plaintiffs in the respective amounts shown in the stipulations. Pursuant to the decisions, plaintiff Edward E. Maher paid income tax and interest in the amount of $23,794.11, and plaintiff Genevieve Maher paid taxes and interest of $23,920.05, a total of $47,714.16.
26. The settlement was made on the basis of treating two of the children, Thomas H. Maher and Louis J. Maher, as partners and by disallowing such treatment for Edward E. Maher, Jr., and Eita Maria Maher. The settlement did not represent a determination of the Internal Eevenue Service that a partnership existed; it was the means of arriving at a settlement which reflected an appraisal by both parties of the hazards of litigation.
At the time of the settlement, the Internal Eevenue Service had asserted gross tax deficiencies against plaintiffs of $135,433.80, plus interest of $35,782, to December 15, 1949, or a total of $171,215.80. The Internal Eevenue Service had also determined offsetting overassessments in favor of the *722 four children of $48,524, plus interest of $11,121 to December 15, 1949, or a total credit of $59,645. The net claim of $111,570 was settled by the payment of $47,714.16.
27. As an additional consideration for the acceptance by the Commissioner of Internal Revenue of the settlement of the cases in the Tax Court, each of the four children signed a written agreement that no refund or credit of income taxes for the years involved would be filed, prosecuted by, or allowed to any of them.
28. No motions were made to set aside the stipulated decisions of the Tax Court or to appeal therefrom, and no claims for refund of the taxes paid as a result of the settlement have been filed by plaintiffs or any of the children.
29. In the negotiations which led to the settlement, Mr. Kelley discussed various court decisions relating to family partnerships, including the Culbertson case, with Messrs. Atkinson, Rhodes, and Burnett. Mr. Kelley had represented the Internal Revenue Service in the trial of the Culbertson case in the Tax Court on November 18, 1946; the decision was reversed by the Circuit Court (Culbertson v. Commissioner, 168 F. 2d 949) and on June 27, 1949, the Supreme Court reversed the decision of the Circuit Court with directions to remand the case to the Tax Court for further proceedings (Commissioner v. Culbertson, 387 U. S. 733). As stated above, the settlement of plaintiffs’ Tax Court suits was made in December 1949, after the Supreme Court had entered its decision in the Culbertson case. That case was retried in the Tax Court on December 12, 1949, and again reversed by the Court of Appeals for the Fifth Circuit on March 6, 1952.
At the time plaintiffs’ cases were settled, there was considerable confusion and much difference of opinion as to the law of family partnerships. The law was clarified by the Act of October 20, 1951 (65 Stat. 511).
30. In the settlement negotiations with plaintiffs’ representatives, Mr. Kelley contends that no bona fide partnership existed between plaintiffs and the children, but no complaint was made that he acted unfairly or arbitrarily. He did not misrepresent the status of the law as he understood it, nor did he exercise any duress or pressure on plaintiffs *723 or their representatives. He never threatened to file tax liens against plaintiffs’ property. He was ready and willing to try the case in the Tax Court, and he believed that the settlement was fair and reasonable.
31. As of March 31, 1950, “Ed Maher, Inc.” (the corporation organized July 1,1946) had cash on hand in the total amount of $175,162.65, consisting of current operating funds of $45,234.79, trust funds of customers’ deposits of $200, and a special fund for income taxes and bonuses for employees of $129,726.86. The latter fund was accumulated through monthly deposits of funds to cover the accrual of corporate income taxes and bonuses to employees.
32. There were several considerations which led plaintiffs to settle the Tax Court cases on the basis which has been described above.
From the information supplied by their attorneys and tax advisers, plaintiffs believed the family partnership was illegal and invalid and that the Internal Revenue Service was doing them a favor by recognizing two of the children as partners for settlement purposes. Plaintiffs did not have enough money to pay the total deficiency assessments of $171,215.80. They owned 51 percent of the stock of the corporation when the settlement was agreed upon but did not see any way to get the money required for the payment of the deficiencies from the corporation, except by declaring dividends and paying additional taxes thereon. In view of their understanding of the law relating to family partnerships and their fears as to the economic and financial consequences to themselves, to their children, and to the business if the compromise was not made, they agreed to the settlement.