## DAUBE v. UNITED STATES.
### No. L–109.

Court of Claims.
Feb. 5, 1934.

William A. Neacey, of Washington, D. C. (John E. Hughes and William Cogger, both of Washington, D. C., on the brief), for plaintiff.

Joseph H. Sheppard, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen. (Elizabeth B. Davis, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

GREEN, Judge.

This is a suit to recover $21,127.67 of an overassessment of tax allowed plaintiff for the year 1918 which was credited, in part, to additional taxes assessed against him for 1917 and the remainder upon taxes assessed against the partnership of which he was a member. In both instances the statute of limitations had run against the collection of the taxes so assessed.

There is no dispute about the facts. Plaintiff is a member of the partnership of

Westheimer & Daube, and on June 16, 1919, filed his individual income tax return for the calendar year 1918 and paid the amount shown to be due. On February 11, 1924, the Commissioner of Internal Revenue notified the plaintiff that the income tax which had been assessed against him for the year 1918 appeared to be $23,138.63 in excess of the amount due and suggested that a claim for refund be filed. Shortly afterwards the plaintiff filed a claim for refund for the year 1918 in the amount of $23,138.63. This claim for refund contained the following statement:

"This claim is based upon the overpayment of income taxes for the year 1918, as shown by Commissioner's letter hereto attached and made a part hereof, which shows an overpayment of $23,138.63, but as the claimant has been assessed an additional tax for the years 1916 and 1917 of $7,265.79, he asks that the additional tax be credited against the total amount refundable of $23,-138.63, and that the remainder after deducting the amount of such credit be refunded to claimant."

A few days prior to filing this claim for refund, the members of the partnership signed an agreement addressed to the Commissioner, which was filed in the office of the collector February 27, 1924. This agreement was to the effect that any refunds which might be due the partners in their individual capacities for 1918 should be applied as a credit against the additional tax of the partnership for 1917. It will thus be seen that the government officials were directed, first, to apply this overpayment on the additional taxes for 1916 and 1917 assessed against the plaintiff individually, and second, that anything due the plaintiff in his individual capacity should be applied as a credit against the additional tax of the partnership for 1917. Some correspondence thereupon ensued between the collector and the plaintiff which is shown in the findings. In the meantime, on March 29, 1924, the Commissioner assessed additional taxes against the plaintiff for 1916 and 1917 in the respective amounts of $2,010.96 and $5,254.83, and an additional tax against the partnership for 1917 in the amount of $53,012.47. On April 24, 1924, the partnership sent a letter to the collector referring to the fact that an application had been filed to have the overpayment of individual income tax for 1918 credited against additional partnership tax of Westheimer & Daube for 1917 and stating, in substance, that this application had been returned to be refiled when the additional assessments had finally been made. The letter also stated, in substance, that the additional assessments for 1917 had been received and the application should now be filed so that the individual overassessments could be credited against the partnership assessments. "Accordingly, we enclose herewith said application, duly attested, showing additional tax due of $13,233.09, closing the accounts of Samuel Daube, David Daube, Max Westheimer, and Westheimer & Daube, for the years 1916, 1917, and 1918."

The Commissioner went through the usual form of signing a preliminary schedule of overassessments in favor of plaintiff for 1918 of $23,138.63 and directing the collector to apply any part of the overassessment against additional taxes for other years which were unpaid. The collector accordingly examined the accounts of plaintiff, and on April 25, 1924, applied the overassessment of $23,138.-63 for 1918 as follows: $2,010.96 against additional tax due from plaintiff for the year 1916; $5,254.83 against additional tax due from plaintiff for the year 1917; and $15,-872.84 against additional tax due from the partnership for 1917. On May 17, 1924, the Commissioner signed an appropriate schedule approving these credits, and subsequent thereto but about the same date the Commissioner delivered to plaintiff a certificate stating that there was an overassessment of his tax for the year 1918 in the sum of $23,138.-63, and that it had been credited on his individual and partnership taxes as above stated. The plaintiff did nothing to indicate that this action was not perfectly satisfactory and agreeable to him until February 26, 1930, when he filed two claims for refund for 1918 in the respective amounts of $5,254.83 and $15,872.84, and one for 1917 in the amount of $5,254.83. It is not necessary, however, to consider any of the claims which plaintiff filed for refund, as none of them complied with the requisites of the statute and there is no contention that suit could be properly brought thereon. The contention of plaintiff is that the certificate of overassessment which was delivered to him, as above set forth, constituted an account stated, and suit having been brought within six years from the time of the delivery of the certificate can now be maintained.

This case was argued and fully submitted before the decision of the Supreme Court in the case of R. H. Stearns Co. v. United States, 54 S. Ct. 325, 78 L. Ed. ——, decided January 8, 1934, and the opinion in that case leaves no doubt as to what the judgment in the case at bar must be on several grounds.

The evidence shows that waivers had been filed both as to the individual and partnership taxes, but these waivers expired April 1, 1924. The taxes in controversy were assessed March 29, 1924, but, as the collection was not made until the credits had been applied, the bar of the statute had run at that time. The plaintiff relies on section 609 of the Revenue Act of 1928 (26 USCA § 2609), which declares a credit against a barred deficiency to be void. But it will be observed that these credits were made at the taxpayer's own request. In the first claim for refund which he filed he requested that the overassessment for 1918 be applied on the additional taxes assessed against him individually for 1916 and 1917, totaling $7,265.79. It has also been shown that an agreement made on the part of plaintiff with reference to this overassessment was sent to the collector in February, 1924, and that in this agreement it was provided that any refunds due the partners in their individual capacities for 1918 should be applied as a credit against the additional tax of the partnership for 1917. It is true that this agreement was returned by the collector because the formal assessment of the taxes involved had not yet been made, with the suggestion that plaintiff should file a formal claim for credit when this was done. After the additional taxes had been assessed, the partnership again sent to the collector an application for the credit of the individual overassessments upon those of the partnership in order that the accounts of the partnership and its members might be closed for the years 1916, 1917, and 1918. The Commissioner after having received these requests made application of the overassessment exactly as had been requested and subsequently delivered to plaintiff a certificate that this had been done, and it is on this certificate that plaintiff brings suit. It will be observed that when plaintiff was notified of the deficiencies he did not deny the liability, but pointed out the way in which they could be paid and requested that they be satisfied in this manner. We do not overlook the fact that the agreement that the final direction with reference to the application on the partnership taxes was made by the partnership, but it was in pursuance of the original agreement executed by the several partners and fully authorized thereby. The case is clearly one for the application of the doctrine of equitable estoppel, or quasi estoppel, as it is sometimes called. The doctrine particularly applies where the acts complained of are induced and brought about by the very party complaining. Its rules are so fully explained and set forth in the opinions of this court and the Supreme Court in the case of David Daube v. United States, 59 F.(2d) 842, 1 F. Supp. 771, 75 Ct. Cl. 633, affirmed 289 U. S. 367, 53 S. Ct. 597, 77 L. Ed. 1261; and in the case of R. H. Stearns Co. v. United States, 2 F. Supp. 773, 77 Ct. Cl. ——, affirmed 290 U. S. ——, 54 S. Ct. 325, 329, 78 L. Ed. ——; and also by the opinion of this court in the case of Naumkeag Steam Cotton Co. v. United States, 2 F. Supp. 126, 76 Ct. Cl. 687, certiorari denied 289 U. S. 749, 53 S. Ct. 694, 77 L. Ed. 1495, that it seems unnecessary to again repeat them. It may be noted, however, that the view which the writer took with reference to sections 607 and 609 of the Revenue Act of 1928 (26 USCA §§ 2607, 2609), in the concurring opinion in the Naumkeag Case, supra, namely, that these sections did not apply where the taxpayer of his own volition and at his own request seeks and consents to have certain credits made upon overassessments, was affirmed in the Stearns Case, supra. Moreover, the effect of the estoppel was to prevent the plaintiff availing himself of the statute of limitations on the collection of the deficiencies.

If there should be any doubt about the application of the doctrine of estoppel to the case at bar (and we do not think there is), it is clear that plaintiff's cause of action is, under the rule laid down in the Stearns Case, barred by the statute of limitations. Plaintiff relies on the certificate of overassessment as constituting an account stated in his favor. In so doing he considers only that part of the account which gives him credit and ignores the part which makes a charge against him. That this cannot be done is well settled by the rules laid down in the Daube Case, supra, and the Stearns Co. Case, supra. In the latter case it is said that the essential of an account stated was long ago defined, and "a balance must have been struck in such circumstances as to import a promise of payment on the one side and acceptance on the other." It seems to us that no reasonable person would claim that the statement of the account between the parties contained in the certificate of overassessment, and which showed that nothing was due the plaintiff by reason of credits on other taxes, imported a claim to pay anything whatever. In view of the circumstances of the case from which it appears that plaintiff acquiesced in the action of the Commissioner and did nothing to indicate any dissent therefrom until nearly six years thereafter, we might well find that the statement constituted an account settled and that plain-

tiff was bound by the account as the Commissioner stated it. It is only necessary, however, that the finding with reference to this matter should show that there was no evidence whatever showing or tending to show any agreement or understanding that there was any sum due plaintiff which defendant would pay, and we have included this ultimate finding of fact in the findings which we are required by law to make.

The case is very similar in its facts to the case of David Daube v. U. S., supra, but counsel for plaintiff contend that there are certain features which distinguish the case at bar and require a different holding than was made in the case last referred to. The matters on which plaintiff relies are included in the findings and referred to in the foregoing opinion, but they do not take the case at bar out from under the rules laid down in the David Daube Case and the Stearns Case.

It is practically conceded by plaintiff that, unless there was an account stated in his favor, the action is barred. We hold that there was no such account stated, and for this and other reasons conclude that plaintiff's action must be dismissed. It is so ordered.

BOOTH, Chief Justice, and WHALEY, WILLIAMS, and LITTLETON, Judges, concur.