## AMERICAN WOOLEN CO. v. UNITED STATES.

Court of Claims.
April 5, 1937.

I.

786

Melville F. Weston, of Boston, Mass. (John W. Townsend, of Washington, D. C., and Powers & Hall, of Boston, Mass., on the brief), for plaintiff.

John W. Hussey, of Washington, D. C., and Robert H. Jackson, Asst. Atty. Gen. (Robert N. Anderson, Fred K. Dyar, and F. F. Korell, all of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

GREEN, Judge.

By agreement of parties two cases, Nos. 42459 and 42904, of the American Woolen Company v. United States, have been submitted to the court under one finding of facts and one argument. Plaintiff's petition set out alternative causes of action for the calendar years of 1922 and 1923 upon which it bases claims for refund. Certain proceedings with reference to plaintiff's tax for 1917 become important in determining the cases now before the court but no refund is claimed for 1917.

Plaintiff duly filed its income and profits tax returns for 1917 and paid the amount of taxes thereby shown to be due. As a result of subsequent audits an overassessment in the amount of $138,492.16 was allowed and plaintiff on March 14, 1923, filed a claim for credit thereof against the assessment for 1922. About July 2, 1923, a certificate of overassessment of $138,492.16 for the year 1917 was issued to plaintiff showing that the amount of the overassessment was credited to the tax for 1922 on the June, 1923, list. This was duly allowed August 1, 1923. The cash payments made by plaintiff in 1923 together with this credit made a total of $1,-292,058.94 which was the assessment for 1922 as it then stood.

June 15, 1924, plaintiff filed its completed return of income for 1923 indicating a tax thereon of $1,465,483.39 which was assessed and paid in full December 15, 1924, and later the plaintiff paid interest in the sum

of $245.57 on a deficiency in the first quarterly payment.

January 27, 1925, the Commissioner advised plaintiff that its 1917 tax liability had been reaudited with the result that a barred deficiency was developed in the amount of $1,829,223.03, and on January 30, 1928, the credit of $138,492.16 which had been made on the taxes of 1922 from an overassessment of 1917 which the Commissioner had determined to be erroneous was "reversed" on the collector's books by direction of the Commissioner indicating that amount as collectible for 1922.

March 15, 1928, the plaintiff filed a claim for refund of $213,996.15 of taxes for the year 1923. Later in the same year proceedings were begun to collect the amount of $138,492.16 then shown by the collector's books to be outstanding on the taxes of 1922 by issuing a warrant of distraint and on April 12, 1928, the plaintiff under protest paid this amount together with interest in the sum of $42,170.86, a total of $180,663.02.

On December 14, 1928, the plaintiff filed a further claim for refund in the sum of $299,967.23 for the year 1923 and on April 10, 1930, plaintiff filed a claim for refund of the sum of $180,663.02 collected April 12, 1928, stating it in the alternative as applicable to the year 1917 or 1922 as the case might be.

About December 17, 1930, the Commissioner sent plaintiff a sixty-day deficiency letter showing deficiencies of $154,819.50 for 1922 and $88.50 for 1923 and stating that the refund claims for the year 1923 had been carefully considered. Annexed to the letter was an elaborate statement and calculation of the method by which the Commissioner's office reached this result which was set forth in more than thirty pages of explanatory matters and figures. It contained a summary of the tax liability of the plaintiff as follows:

| Year | Corrected tax liability | Tax previously assessed | Deficiency |
|---|---|---|---|
| 1922 | $1,446,978.44 | $1,292,058.94 | $154,819.50 |
| 1923 | 1,465,571.89 | 1,465,483.39 | 88.50 |
| | 2,912,450.33 | 2,757,542.33 | 154,908.00 |

It will be observed that this statement is made as if the "tax previously assessed" had been paid, but there was nothing in the statement as to the manner in which the original assessment for 1922 had been satisfied. It is plain, however, that the credit of $138,492.16 originally made from an overassessment for 1917 was not allowed in the statement submitted.

About December 29, 1930, the plaintiff was formally notified by the Commissioner that its refund claim of $180,663.02 would be rejected both as to the year 1917 and the year 1922, and shortly after on January 12, 1931, the plaintiff filed a petition with the Board of Tax Appeals for redetermination of its tax liability for 1922 and 1923. The proceedings before the Board of Tax Appeals will be narrated further on. In the meantime, the plaintiff brought suit in the District Court of Massachusetts against the collector to recover with interest the sum of $180,663.02 collected from it on the taxes of 1922 as stated above. This suit ultimately resulted in a dismissal without prejudice and has no bearing on the issues now before us.

It has been hereinabove shown that after the account of plaintiff for 1922 had been balanced by a credit of $138,492.16 and after the statute of limitations had run against the collection of the tax for 1917, the Commissioner "reversed" his holding that there was an overassessment for 1917 and held instead that there was a deficiency for that year of $1,829,223.03; also that this left $138,492.16 outstanding against the plaintiff and unpaid for 1922. In his directions to the collector given about January 1928, under which this so-called reversal was made, the Commissioner, after stating that a large deficiency had been found in the taxes for 1917 instead of an overassessment, said: "It therefore will be necessary for you to reverse the overassessment of $138,492.16 applied to the June 1923 List, account No. 424000, and to immediately collect the tax left outstanding as a result of this adjustment." By this, he meant that the collector should cancel the overassessment for 1917 and the credit made therefrom on the taxes of 1922, and that was what the collector did. The plaintiff strenuously contends that the Commissioner had no right to "reverse" the credit, especially as the statute of limitations had then run against the collection of taxes for 1917, and also argues that the reversal of the credit was never ordered by the Commissioner but only by the deputy commissioner without authority. The plaintiff also says

788

that the record does not disclose any facts which would justify the finding of the deficiency for 1917 instead of an overassessment and that the burden of proof on this point rested with the defendant. We are inclined to think the Commissioner had authority to reverse the credit, but in view of what took place subsequently, we do not consider it necessary to discuss these contentions.

■ Taking up next the proceedings before the Board of Tax Appeals to determine the taxes of plaintiff for 1922 and 1923, we find that the parties filed a stipulation in which it was agreed that for the year 1922 there is a deficiency in income tax of $154,819.50, and that for the year 1923 the following is a statement of the petitioner's income-tax liability:

Tax assessed and paid..................... $1,465,483.39
Correct tax liability...................... 1,240,681.79

Overpayment ......................... 224,801.60

And it was further agreed that the Commissioner might assess and collect the deficiencies immediately upon the issue by the Board of Tax Appeals of its order of redetermination. Accordingly, on January 12, 1932, the Board entered an order of deficiency for 1922 of $154,819.50 and an overpayment of $224,801.60 for 1923. No appeal was ever taken from this decision, and it therefore became final as a statement of plaintiff's account for taxes for these two years on the date last mentioned. No question was raised before the Board of Tax Appeals as to the manner in which the original assessment for 1922 had been satisfied. Under the statute and the rulings which we have made in several decisions the order of the Board became res adjudicata not only as to such matters as were submitted to the Board but as to all other matters with reference to the taxes for these two years which might have been presented. See quotation from case of Ohio Steel Foundry Co. v. United States, 38 F.(2d) 144, 69 Ct.Cl. 158, set out later on in this opinion.

■ February 13, 1932, the Commissioner assessed against plaintiff the deficiency of $154,819.50 for 1922 found by the Board and interest thereon to February 11, 1932, of $79,258.04, total $234,077.54. March 7, 1932, the Commissioner signed a schedule of overassessments showing $224,801.60 overassessed for 1923. The collector credited that sum March 14, 1932, upon the ad-

ditional taxes for 1922 with interest, which action was approved by the Commissioner March 15, 1932, and that left, after another minor adjustment, $9,030.37 unpaid for 1922. The law expressly required the Commissioner to make this credit. See section 284 (a), Revenue Act of 1926 (44 Stat. 66), and section 322 (a), Revenue Act of 1928 (26 U.S.C.A. § 322 and note). We have held to that effect in Standard Oil Co. v. United States, 5 F.Supp. 976, 7 F. Supp. 301, 78 Ct.Cl. 714, 740, and several other cases which were complicated by surrounding circumstances. In the case at bar, there are no such complications. It is a clear case for the application of the statutory provision that "where there has been an overpayment of any * * * tax * * * the amount of such overpayment shall * * * be credited against any income, war-profits, or excess-profits tax or installment thereof then due from the taxpayer." 44 Stat. 66, § 284 (a). In the case last cited we went so far as to hold that the overpayment must be so applied although such application was not consistent with the instructions of the taxpayer. In March 1932, the collector demanded and received from plaintiff $9,030.37, being the amount unpaid on the taxes of 1922, after the deficiency for that year and interest thereon had been credited with the overpayment for 1923, together with a small item of interest and shortly after paid plaintiff $96,612.34 interest on the overpayment for 1923. This balanced and closed the accounts for both years (see Finding 17).

■ All these proceedings were strictly in accordance with law. Some question may arise as to whether the Commissioner rejected the last claim for refund for 1923 filed December 14, 1928, but we do not think this is material and it is not treated as material in the argument of plaintiff's counsel in support of a refund of the overassessment finally determined for 1923 by both the Board and the Commissioner, the argument being based on the decision of the Board of Tax Appeals. We have held that when a taxpayer has a decision of the Board in his favor he can bring suit thereon. But this does not mean that where the Commissioner has applied an overpayment found by the Board in the manner required by law, the taxpayer can still recover by suit the amount thereof. When the Government shows, as it has in this case, that the amount of the overassessment was credited on a deficiency then due

under the decision of the Board, it is a complete defense.

No logical theory can be framed under which plaintiff can now maintain a suit on the ground that there is due it $138,492.-16 with interest, for the proceedings of the Commissioner subsequent to the decision of the Board of Tax Appeals were based upon the order of the Board and are not in conflict but in accord therewith. It is argued on behalf of the plaintiff that the Board of Tax Appeals, after its determination had been made, did not have jurisdiction to decide anything with reference to the interest charged on the deficiency for 1922 and the application of the overpayment for 1923 which left a balance of $9,030.37 to be paid by the plaintiff. This argument obliges us to repeat in a little different form some matters already stated, the consideration of which will show that the Board's decision left nothing further to adjudicate. The net amount due the plaintiff under the determination of the Board of the taxes of 1922 and 1923 and the law with reference to credits was merely a matter of mathematical calculation in which interest was charged according to law on the deficiency for 1922 and from the resulting total of $234,-077.54 due for 1922, there was deducted the overpayment of $224,801.60 on taxes for 1923 and another small interest payment as to which there is no controversy. This made no disposition of the interest on the overpayment for 1923. The Commissioner might have satisfied the $9,030.37 out of this interest due the plaintiff on the overpayment. Instead of so doing, he collected this sum from plaintiff and certified for payment the whole amount of interest due on the 1923 overassessment. But there is nothing in this of which the plaintiff can complain. The ultimate result was the same.

The form of the stipulation is such that it must be presumed that all matters of controversy between the parties with reference to the taxes for 1922 and 1923 were covered thereby and disposed of by the final order of the Board. Moreover, the tax liability of $1,446,878.44 fixed by the Board for 1922 is utterly inconsistent with the allegations upon which plaintiff bases its claim for refund for 1922 as last filed.

The case of Ohio Steel Foundry Co. v. United States, 38 F.(2d) 144, 148, 69 Ct.Cl. 158, is cited by plaintiff in support of its position. We think the opinion therein is to the contrary. In the first place the basic facts in the Ohio Steel Case were altogether different from those in the case at bar and a different question was presented to the court. The issue in that case was whether after a suit had been commenced in this court to recover taxes, the determination of a deficiency by the Commissioner and the institution by the taxpayer of a proceeding before the Board of Tax Appeals in relation to the same matters deprived this court of jurisdiction, and the court held that it did not. In that case it appeared as in the case at bar that the Commissioner had determined and notified the taxpayer of a deficiency in respect to a taxable year and the taxpayer instituted a proceeding before the Board of Tax Appeals for the redetermination of such deficiency. Among other things, the court held that in such a case the Board of Tax Appeals and the appellate courts had "exclusive power ultimately and finally to decide all questions, both as to deficiencies and overpayments, that could arise between the taxpayer and the Government in connection with the tax liability for the year or years involved in such proceedings"; that under such circumstances the law "contemplated that no suit should be instituted by a taxpayer for the recovery of a tax"; and further that: "Under such circumstances it would be incumbent upon the taxpayer to raise all questions relating to his tax liability for the taxable year, in respect of which the Commissioner had determined the deficiency, before the Board of Tax Appeals and to pursue his remedy with respect both to the deficiency and to any claimed overpayment to a conclusion under the provisions of the Revenue Act of 1926, either by accepting the decision of the Board, which has become final by the expiration of the time for filing of a petition for review of such decision, or by prosecuting such review to a conclusion as provided by law."

The court, however, went on to hold that the statutory provision that "no suit by the taxpayer for the recovery of any part of such tax liability shall be instituted in any court" applied only to suits begun *after* the mailing of the deficiency notice and institution of a proceeding before the Board of Tax Appeals such as is found in the case now before us, and that it had no application to a case commenced prior to the proceedings before the Board of Tax Appeals, which was the situation in the case cited.

Plaintiff's counsel quote the following from the opinion in the last named case as supporting their argument: "With respect to the question of interest and credits over which the Board has held it has no jurisdiction, we find nothing in the statute which would preclude the taxpayer from bringing suit in this court upon any alleged improper credit or alleged failure properly to compute and pay interest upon any overpayment found by the Board."

When we consider this statement in connection with the remainder of the opinion, it is quite plain that the court had reference to credits made and interest allowed *after the decision of the board* to which the board's decision manifestly would not apply, but there is no claim in the case at bar that the subsequent proceedings as to interest and credit were settled by the Board's decision. The interest charged on the deficiency for 1922 was fixed by the law with reference to interest on deficiencies. The credit of the overassessment for 1923 upon the amount due for 1922 was positively required by the statute. The rest, as we have said, was merely a matter of mathematical calculation. It is evident that no proper objection can be made to the proceedings of the Commissioner subsequent to the decision of the Board of Tax Appeals.

It follows from what is said above that the plaintiff has no valid claim for a refund and its petitions in the two cases before us must be dismissed.

BOOTH, Chief Justice, and WHALEY and WILLIAMS, Judges, concur.

LITTLETON, Judge.

I concur in the decision dismissing the petitions on the ground that the judgment of the United States Board of Tax Appeals is res adjudicata as to all questions affecting the tax liability for 1922 and 1923. Peerless Woolen Mills v. Commissioner, 13 B.T.A. 1119, and T. W. Warner Co. v. United States, 15 F.Supp. 160, 83 Ct.Cl. ——.