26 F.3d 137
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
ORMCO CORPORATION, Plaintiff-Appellant,
v.
LANCER ORTHODONTICS, INC., Defendant-Appellee.
 No. 93-1426.
 United States Court of Appeals, Federal Circuit.
 April 6, 1994.
 
 Before LOURIE, Circuit Judge, COWEN, Senior Circuit Judge, and CLEVENGER, Circuit Judge.
 DECISION
 LOURIE, Circuit Judge.
 
 
 1
 Ormco Corporation appeals from a final judgment of the District Court for the Southern District of California, entered on a jury verdict finding U.S. Patent 4,415,330 invalid for failure to comply with the best mode requirement of 35 U.S.C. Sec. 112 (1988). Ormco Corp. v. Lancer Orthodontics, Inc., No. 890518 (S.D.Cal. Jun. 3, 1993). The court denied Ormco's alternative motions for judgment as a matter of law and for a new trial. Ormco Corp. v. Lancer Orthodontics, Inc., No. 890518 (S.D.Cal. Apr. 30, 1993) (order). Because the evidence does not support the verdict, we reverse the court's denial of the motion for JMOL and remand for reconsideration of its denial of the motion for new trial.
 
 DISCUSSION
 
 2
 Ormco brought suit against Lancer for infringement of its '330 patent relating to orthodontic brackets for straightening teeth. Lancer responded by seeking a declaration of non-infringement and invalidity alleging, inter alia, that the inventors failed to disclose the best mode for carrying out their claimed invention. See 35 U.S.C. Sec. 112 (1988). The jury agreed, and the court held that the patent was invalid for failure to disclose the best mode. The court subsequently dismissed Ormco's claim for literal infringement and declined to rule on infringement under the doctrine of equivalents because the jury was unable to reach a verdict on that issue. Post-verdict motions were filed by Ormco, seeking judgment as a matter of law and, in the alternative, a new trial on the best mode issue. Ormco also moved for a new trial to determine infringement and damages. The court denied Ormco's motions on April 30, 1993 and entered judgment pursuant to the verdict on June 3, 1993. Ormco now appeals, seeking a reversal of the denial of JMOL or a new trial.
 
 
 3
 Title 35, section 112, of the United States Code provides, in pertinent part, that "[t]he specification ... shall set forth the best mode contemplated by the inventor of carrying out his invention." 35 U.S.C. Sec. 112 (1988). The purpose of the best mode requirement is to ensure that the public, in exchange for the grant of a patent, obtains from an inventor a full disclosure of the preferred embodiment of the invention. In re Gay, 309 F.2d 760, 772, 135 USPQ 311, 315 (CCPA 1962). Whether or not an inventor has complied with the best mode requirement is a question of fact. Scripps Clinic & Research Foundation v. Genentech, Inc., 927 F.2d 1565, 1578, 18 USPQ2d 1001, 1012 (Fed.Cir.1991).
 
 
 4
 We review decisions on motions for JMOL to determine whether there was substantial evidence to support the jury's findings and whether those findings were sufficient to support the legal conclusions drawn from the jury's verdict. Dana Corp. v. IPC Ltd. Partnership, 860 F.2d 415, 418, 8 USPQ2d 1692, 1694 (Fed.Cir.1988), cert. denied, 490 U.S. 1067 (1989). Ormco argues that the court improperly denied its motion for JMOL because Lancer produced no evidence that the inventors had in mind any better mode for practicing their invention than was disclosed in the patent. Lancer argues that there was substantial evidence to support the jury's verdict.
 
 
 5
 The patent's only claim is directed to an orthodontic bracket assembly.[1] Generally, the bracket assembly is mounted on a misaligned tooth and anchors a wire, which is tensioned to apply corrective forces to the tooth. The bracket assembly is specially configured to assist an orthodontist in properly aligning each bracket on a tooth. Specifically, when mounted on a tooth, the vertical components of the assembly are aligned with the longitudinal axis of the tooth, while the horizontal components of the assembly are aligned with the horizontal plane of the mouth.
 
 
 6
 The claim language giving rise to Lancer's best mode challenge is that reciting an "oblique angle" associated with certain components of the bracket assembly. The patent specification describes a "preferred angle A," which is the amount by which the "oblique angle" differs from 90?. A table in the specification sets forth the "preferred angle A" for each of several listed teeth, as follows:
 
 
 7
 ANGLE A
 ----------
Tooth Maxillary Mandibular
Central Incisors 5 degrees 2 degrees
Lateral Incisors 8 degrees 2 degrees
Cuspid Incisors 10 degrees 6 degrees
First Bicuspids 2 degrees 2 degrees
Second Bicuspids 2 degrees 2 degrees
First Molars 5 degrees 2 degrees
 
 
 8
 The figures in the table were supplied by one of Ormco's product managers, who "derived" them from literature published by another manufacturer of brackets and "modified" them based upon feedback he received from customers.
 
 
 9
 Ormco elected not to manufacture and sell a 2? bracket for those teeth listed in the table as having a preferred angle of 2?. Instead, Ormco manufactured and sold brackets having no angulation (the "0? bracket") and a device known as a buccal tube, which had an angulation of -5? (the "-5? buccal tube"). The following table compares the preferred angulation disclosed in the patent with the actual angulation in the devices sold by Ormco:
 
 
 10
 ANGLE A
Tooth Maxillary Mandibular
 Preferred Actual Preferred Actual
Central Incisors 5 degrees 5 degrees 2 degrees 0 degrees
Lateral Incisors 8 degrees 8 degrees 2 degrees 0 degrees
Cuspid Incisors 10 degrees 10 degrees 6 degrees 6 degrees
First Bicuspids 2 degrees 0 degrees 2 degrees 0 degrees
Second Bicuspids 2 degrees 0 degrees 2 degrees 0 degrees
First Molars 5 degrees 0 degrees 2 degrees -5 degrees
 
 
 11
 During the trial, Ormco gave several reasons for its decision not to manufacture and sell 2? brackets. There was evidence that a difference of 2? was not perceptible from a practical standpoint. Also, Ormco could not be assured of accurately manufacturing a 2? bracket because Ormco's manufacturing tolerances were ±1? and placement cannot be obtained with less than 2?, we thought we would be kidding ourselves to produce a 2? [bracket]." Furthermore, for marketing and inventory control reasons, Ormco concluded that 2? and 0? were "close enough in practice that, rather than create a series of right and left 2? brackets, the company would simply opt for a universal 0? bracket to be used wherever 2? was called for ... to enable Ormco and its customers to carry a reduced inventory of brackets."
 
 
 12
 Lancer emphasizes the following testimony by Daisley, one of the named inventors:
 
 
 13
 Q. All right. If we look to angle A, we see that many of them--in fact, one, two, three, four, five, six--seven, if I count them--are listed as two degrees, are they not?
 
 
 14
 A. That is correct.
 
 
 15
 Q. It's a fact, is it not, that really two degrees is not perceptible?
 
 
 16
 A. That's what I believe, yes.
 
 
 17
 * * *
 
 
 18
 * * *
 
 
 19
 Q. And isn't it a fact that the decision to put the two degrees in the Table I of the patent was driven by marketing considerations at Ormco?
 
 
 20
 A. Yes.
 
 
 21
 Q. And you knew and Ormco knew that if people that were to make a two-degree cant would be within the patent, either subject to royalties or to be enjoined if they were to infringe, did you not?
 
 
 22
 A. Yes.
 
 
 23
 Relying on Daisley's testimony, Lancer argues that Daisley knew at the time of filing his application that seven of the twelve preferred angles set forth in the patent were "fictitious and inoperable, that they were imperceptible to the human eye, and that they would provide no assistance whatsoever in aligning a bracket on a tooth." Lancer argues that the best mode of the invention is not the full range listed in "Table A"; rather, the best mode is a "narrower range of angles than that disclosed," that is, a range of angles from 5? to 8?. Specifically, it is Lancer's contention that the invention simply cannot be carried out with an angulation of 2? and that the best mode provision was violated because the inventors withheld from the public the knowledge that the invention requires larger angulations. Lancer asserts that Daisley withheld the best mode to "misdirect[ ] the public by saying that the brackets could be used ... with angles as small as 2? [knowing] this statement was false [and exaggerating] the best mode in order to mislead others into believing that the invention was suitable for a wide range of brackets." Lancer contends that this was done for "marketing considerations," so that "greater royalties might be extracted from Ormco's competitors."
 
 
 24
 To prevail in its best mode challenge, Lancer was required to prove by clear and convincing evidence that, at the time Daisley and Ring filed their application, they knew of and concealed a mode of practicing their claimed invention that they considered to be better than any other. See Chemcast Corp. v. Arco Indus. Corp., 913 F.2d 923, 928, 16 USPQ2d 1033, 1036 (Fed.Cir.1990). Lancer has not produced evidence that the inventors believed another device to be a better mode of practicing the claimed invention than that which they disclosed. Thus, we conclude that there was no evidence to support a finding that Ormco's patent violated the best mode requirement.
 
 
 25
 Daisley's testimony does not establish that the inventors knew of or concealed a better mode at the time they filed their application. It simply indicates that small angular differences were not readily perceptible and that marketing considerations influenced what went into the patent application. More is required to show a best mode violation.
 
 
 26
 The fact that a patentee manufactures a device that is different from or better than that which he claims in a patent also does not ipso facto lead to a conclusion that the inventor knew of or concealed a better mode of practicing the patented invention than what was disclosed. See Texas Instruments Inc. v. International Trade Comm'n, 871 F.2d 1054, 1061, 10 USPQ2d 1257, 1262 (Fed.Cir.1989). Ormco was entitled not to manufacture or sell its claimed invention and, for commercial reasons, to sell a related product. It is not disputed that Ormco's 0? bracket and its -5? buccal tube were not within the scope of the claimed invention. A product outside the scope of one's claims is not a mode of carrying out the claimed invention. Even if it were within the scope of the claimed invention, it is not a violation of the best mode requirement to fail to disclose a mode that is no better than the mode disclosed.
 
 
 27
 Nor does the fact that a marketing person decided what angles to insert into the patent application indicate a best mode violation unless there was evidence that the inventor knew and concealed the fact that the claimed invention could be better carried out at other angles. There was no such evidence here.
 
 
 28
 Lancer's argument is not that there was a better mode at certain angles; rather it is that there is no mode of the invention at those angles. Lancer incorrectly relies on our holding in Consolidated Aluminum Corp. v. Foseco International, Limited, 910 F.2d 804, 15 USPQ2d 1481 (Fed.Cir.1990) for the proposition that an inventor's disclosure of a "fictitious" or "inoperable" mode amounts to a best mode violation. In Consolidated, we did not hold that the disclosure of a fictitious and inoperable mode amounts to a best mode violation. The patentee in that case violated Sec. 112, not because he disclosed a fictitious mode, but because he failed to disclose an existing, superior mode. In addition to the patentee's failure to disclose the mode he considered best, violating the requirements of Sec. 112, the patentee in that case engaged in inequitable conduct by intentionally disclosing a fictitious and inoperable mode. The district court here found that there had been no inequitable conduct and that finding has not been appealed by Lancer. Such a finding would be the subject of a separate and distinct inquiry from that of compliance with the best mode requirement; it is not before us. Moreover, there is no evidence in this case that the 2? brackets that were disclosed here were known to be fictitious or inoperable.
 
 
 29
 Since there was no evidence to support the jury's finding of non-compliance with 35 U.S.C. Sec. 112, we reverse the district court's denial of Ormco's motion for JMOL and hold that the '330 patent is not invalid for failure to comply with the best mode requirement. We remand for the court to reconsider Ormco's motion for new trial on the issues of infringement and damages in view of our holding.
 
 
 
 [1]
 The claim recites:
 An orthodontic bracket assembly for use with an archwire to impart corrective forces on a tooth, including:
 a base pad for attachment to the tooth,
 a distal tie wing fixed to said base pad and including a gingival tip and an occlusal tip defining between them an archwire slot,
 a mesial tie wing fixed to said base pad and including a gingival tip and an occlusal tip defining between them an archwire slot, each of said distal and mesial tie wings having parallel distal and mesial sides,
 said archwire slots being in mutual alignment and providing a reference line for orientation parallel to the occlusal plane of a patient,
 said sides of said tie wings are inclined at an oblique angle to said reference line, whereby said tie wings can be generally vertically disposed parallel to the tooth long axis and still be inclined at an oblique angle to said reference line,
 said gingival tips and said occlusal tips of said tie wings having respectively top and bottom surfaces which are in mutual alignment parallel to said reference line and substantially equidistant therefrom,
 whereby said tie wings together form a rhomboidal configuration and the axis of said archwire slots bisects said tie wings so that said gingival tips and said occlusal tips are of equal size [emphasis added].