CONTINENTAL OIL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 28427.    Promulgated March 5, 1936.

*Arthur B. Hyman, Esq.*, for the petitioner.

*J. L. Backstrom, Esq.*, and *P. A. Sebastian, Esq.*, for the respondent.

OPINION.

VAN FOSSAN: From the Board's decision in this proceeding, following the opinion of May 19, 1931, 23 B. T. A. 311, the respondent filed a petition for review in the Court of Appeals for the District of Columbia. The Board's decision was reversed, November 27, 1933, *Commissioner* v. *Continental Oil Co.*, 68 Fed. (2d) 750, and the proceeding remanded with instructions "to proceed in accordance with the views expressed in the opinion of this Court."

In its opinion, the Board held that the deficiency notice covered only the petitioner's liability for the tax, if any, owing by the Mutual Oil Co. of Maine, for the period January 1 to March 15, 1920, and, since that company owed no tax, it having sustained a net loss in that period, there was no transferee liability, and it accordingly determined no deficiency. Under that decision, the Board found it unnecessary to dispose of three assignments of error pertaining to the merits of the deficiency and, consequently, no decision was made as to them. The court held that the notice asserted "a liability for taxation for the period in question against Continental as transferee of all the oil companies involved", namely, Mutual Oil Co. of Maine, Mutual Oil Co. of Arizona, Mutual Refining & Producing Co., and Northwestern Oil Refining Co. This decision of the court not only requires us to examine further the matter of petitioner's liability, under section 280 of the Revenue Act of 1926, for the deficiencies in taxes, if any, of Maine, Arizona, Mutual Refining, and Northwestern, for the period January 1 to March 15, 1920, but renders it necessary now to dispose of the three assignments of error left undecided by our earlier opinion. These assignments are:

(a) That respondent determined the taxpayers' invested capital for the period in question to be a proportional part of the full invested capital;

(b) That respondent determined the taxpayers' net income for the period in question to be $196,469.18, whereas the correct net income is $79,657.27; and

(c) That respondent failed to give credit for income and profits taxes paid in behalf of the taxpayers for the period in question, in the amount of $200,707.45.

Briefly reviewing the facts set forth in our earlier opinion, pertaining to the matter of petitioner's liability as transferee, it appears that throughout the period in question Maine owned all of the capital stock of Arizona, Mutual Refining, and Northwestern; that on March 15, 1920, petitioner acquired all of the capital stock of Maine; that on March 15, 1920, Maine transferred all of its assets to petitioner, in exchange for 600,000 shares of petitioner's capital stock, which shares had a fair market value of not less than $9 each; that the value of the net assets so transferred by Maine to petitioner was sufficient to meet Maine's liability, if any, as of the date of transfer,

for income and profits taxes; that Maine, Arizona, Mutual Refining, and Northwestern were in existence, carrying on and conducting their respective businesses, throughout the whole of 1920; that petitioner filed a consolidated return for 1920, which return included the net income and invested capital for the whole of 1920, of Maine, Arizona, Mutual Refining, Northwestern, and itself, and showed a total tax of $200,707.45 which petitioner paid; that for the period in question, Maine sustained a net loss of $8,255.02; that on April 30, 1921, Mutual Refining and Northwestern, without any consideration therefor, transferred all of their assets to Arizona; that the value of the net assets so transferred by Mutual Refining and Northwestern to Arizona was, in each instance, sufficient to meet the transferor's liability, if any, as of the date of transfer, for income and profits taxes; that on December 31, 1921, Arizona, without any consideration therefor, transferred all of its assets to petitioner; that the value of the net assets so transferred by Arizona to petitioner was sufficient to meet Arizona's liability, if any, as well as the liabilities of Mutual Refining and Northwestern, if any, as of the date of transfer, for income and profits taxes; that petitioner was a Maine corporation, and Mutual Refining and Northwestern were Wyoming corporations; and that Maine and Mutual Refining were dissolved in 1921 and Arizona and Northwestern were dissolved in 1922.

Since Maine sustained a net loss in the period January 1 to March 15, 1920, it is obvious that there can be no deficiency, and, hence, no transferee liability on the part of the petitioner, in respect of the taxes of that company for the period in question.

The petitioner is liable in equity as transferee of the assets of Arizona, Mutual Refining, and Northwestern, in respect of the deficiencies in taxes of those companies for the period in question. It concedes that it is the transferee of Arizona; but, contrary to its contention, it, and not Arizona, is likewise the direct transferee of Mutual Refining and Northwestern. The petitioner, as the sole shareholder of Mutual Refining and Northwestern, was the motivating force behind the transactions in which those two companies transferred, without any consideration therefore, all of their assets to Arizona, in which it was also the sole shareholder. Corporations do not and can not dispose of their assets in such a manner as to create a condition of virtual insolvency, without the consent of their shareholders. Certainly, Arizona was in no position to compel the other two companies to transfer their assets, without consideration, to it. The substance of the transactions, by which Mutual Refining and Northwestern divested themselves of all of their assets, was that those two companies distributed their assets in liquidation and Arizona received them as the nominee of the petitioner. The peti-

tioner is chargeable with the constructive receipt of those assets in the first instance, and their transfer to Arizona was but an added investment in that company by petitioner. Cf. *Homer S. Warren et al., Administrators*, 31 B. T. A. 1041, 1048.

The petitioner argues that it is the taxpayer in respect of the taxes due on the income of Mutual Refining and Northwestern for the period in question; that it can not have the dual capacity of both taxpayer and transferee; and that since its liability in respect of those taxes is that of a taxpayer, "it follows that the statute of limitations bars the assessment and collection of any alleged deficiency, for the Board has held that original liability became extinguished on March 15, 1926, one year before the deficiency letter was issued by the respondent." The entirely erroneous argument that petitioner is the taxpayer is predicated upon the facts that it filed a consolidated return for 1920, which included the income of Mutual Refining and Northwestern for the whole of that year, and that it paid the tax shown to be due upon that return. But petitioner had no affiliated relationship with Mutual Refining and Northwestern, or with their common parent, Maine, prior to March 15, 1920, and the inclusion of their income of the antecedent 1920 period in the consolidated return for calendar 1920 has no statutory justification and was error. Mutual Refining and Northwestern, together with Maine and Arizona, existed as an entirely separate affiliation during the period in question, for which period, a separate consolidated return, including the income of those four companies, was required. The fact that petitioner filed an incorrect return for 1920 and paid the tax shown to be due thereon can not serve to put the petitioner in the place and stead of Mutual Refining and Northwestern, as the taxpayer, in respect of the taxes due upon the income of those companies for a period during which there was no affiliated relationship of the three. The cases cited by petitioner are not in point, for in all of them an affiliated status actually existed in the period under consideration.

Since the value of the net assets received by petitioner from Arizona, Mutual Refining, and Northwestern exceeded, in each instance, the transferor's liability for income and profits taxes, as of the date of the transfer, the petitioner is liable in respect of the entire deficiencies, if any, in the taxes of those companies.

In its earlier opinion, the Board made the following findings:

\* \* \* the respondent \* \* \* determined that a consolidation existed with the Mutual Oil Company of Maine as parent, Mutual Refining and Producing Company, Northwestern Oil Refining Company and Mutual Oil Company of Arizona as subsidiaries for the period January 1 to March 15, 1920, and a new consolidation with the Elk Basin Consolidated Petroleum Company

(the petitioner) as parent, the Mutual Oil Company of Maine and its said subsidiaries as subsidiaries for the period March 15 to December 31, 1920.

For the period January 1 to March 15, 1920, respondent fixed invested capital at January 1, 1920, at the sum of $3,192,636.27 and apportioned to the period January 1 to March 15, 1920, two and a half twelfths thereof, to-wit, $665,132.55. The accuracy of the figures is conceded, the propriety of the apportionment of invested capital being in controversy.

The petitioner contends that "there is no authority in law for the apportionment of invested capital for the purpose of arriving at excess profits taxes", and that Maine, Arizona, Mutual Refining, and Northwestern are entitled to have their profits taxes for the period January 1 to March 15, 1920, determined upon the basis of their full invested capital and not a fractional part thereof. Since the affiliation which existed in the period January 1 to March 15, 1920, of Maine, Arizona, Mutual Refining, and Northwestern, was an entirely different and separate affiliation from that which existed during the remainder of calendar 1920, a separate consolidated return was required for the said period; and it has long been settled that when changes in affiliation require the making of a return for a fractional part of a year, section 326 (d) of the Revenue Act of 1918 applies and invested capital is the same fractional part of the average invested capital for the year. *Green River Distilling Co.*, 16 B. T. A. 395. *Pittsburgh & West Virginia Railway Co.*, 32 B. T. A. 66, 75. None of the cases relied upon by petitioner are in point, since all of them deal with either the first or the last accounting period of the taxpayer concerned, which is entirely different from a fractional period created by change in affiliated status. The respondent's determination of invested capital for the period in question conforms with the view above expressed, and, accordingly, it is approved.

In respect of the matter of the net income of Maine, Arizona, Mutual Refining, and Northwestern, the Board's earlier opinion contains these findings:

For the year 1920 the income of the Mutual Company of Arizona was the sum of $187,905.41, the income of the Northwestern Oil Refining Company was the sum of $420,977, and the income of the Mutual Refining and Producing Company was the sum of $403,672.45, as determined by the respondent, of which net incomes respondent apportioned to the period January 1 to March 15, 1920, two and one-half twelfths thereof in the following amounts:

| | |
|---|---:|
| Mutual Oil Company of Arizona | $37,991.80 |
| Mutual Oil Company of Maine, loss (actual) | 8,255.02 |
| Northwestern Oil Refining Company | 85,115.57 |
| Mutual Refining & Producing Company | 81,616.83 |
| Total net income | $196,469.18 |

Exhibit C filed with the stipulation is a statement purporting to show the net income of the Mutual Refining and Producing Company for the period January 1 to March 15, 1920, which statement truly and accurately reflects such income so far as same may be determined without an actual closing of the books, it being stipulated that such closing was not made. The respondent does not concede that his method of determining the net income for the period is incorrect.

Exhibit D attached to the stipulation is a statement purporting to show the net income of the Northwestern Oil Refining Company for the period January 1 to March 15, 1920, which statement truly and accurately reflects such income so far as same may be determined without an actual closing of the books, it being stipulated that such closing was not made. The respondent does not concede that his method of determining the net income for the period is incorrect.

Attached to the stipulation (marked exhibit E) is a statement purporting to show the net income of the Mutual Oil Company of Arizona from January 1 to March 15, 1920, arrived at by determining the ratio of gross profits to sales for the entire year and applying such ratio to the period January 1 to March 15, 1920, as to all departments except the Chanute Refinery. Such statement, except page one headed Statement of Income for First Two and One-half months of 1920, correctly shows the entries in the books of said company, the propriety of such method of computing net income, however, not being admitted by the respondent. No monthly inventories were taken for the period involved except that the net income of the Chanute Refinery was determined by using monthly inventories of stocks, it being also stipulated that the books of the Chanute Refinery were not closed monthly. The respondent does not concede that his method of determining the net income of the Mutual Oil Company of Arizona for the period January 1 to March 15, 1920, is incorrect.

The net loss of the Mutual Oil Company of Maine, which owned only the stocks of the Mutual Oil Company of Arizona, Northwestern Oil Refining Company and the Mutual Refining and Producing Company, for the period from January 1 to March 15, 1920, was the sum of $8,255.02.

\* \* \* \* \* \* \*

The income as shown by the books did not differ from a situation in which the books had been actually closed at the end of each month with the exception that the depreciation was not computed monthly. Depreciation was the only item which distinguished between the closing and nonclosing of the books. In order to arrive at the income of the Mutual Oil Company of Arizona for the period from January 1, 1920, to March 15, 1920, the ratio of percentages of the gross profit to gross sales was applied to actual sales. Comparison with the two succeeding years in which physical inventories were actually kept from month to month showed the same percentages.

Exhibit C shows net income of $80,604.23 for Mutual Refining; Exhibit D shows net income of $45,326.97 for Northwestern; and Exhibit E shows a net loss of $39,010.31 for Arizona. Petitioner contends that these are the proper figures for determining the tax liabilities of the companies concerned, for the period in question, rather than those determined by respondent by an arbitrary formula.

The practice of determining net income for a fractional part of a year by apportionment of the year's entire net income on a time basis has received the sanction of this Board and the courts, when circum-

stances indicated the unavailability of other methods more capable of clearly reflecting net income. *L. S. Ayers & Co.*, 1 B. T. A. 1135; *Carl Lang*, 3 B. T. A. 417; *Peter W. Rouss*, 4 B. T. A. 516; *Watab Paper Co.*, 27 B. T. A. 488; and *Rouss* v. *Bowers*, 30 Fed. (2d) 628; certiorari denied, 279 U. S. 853. But where net income for the fractional part of the year is clearly reflected by the books, or circumstances indicate that it may be more clearly reflected by other methods, the time formula of apportionment must give way. *Grego A. Anticich*, 18 B. T. A. 513; and *Reynolds* v. *Cooper*, 60 Fed. (2d) 650.

Here, in the case of Mutual Refining and Northwestern, there was a complete monthly accounting, on the books, of all income and expenses, except depreciation which apparently was entered only annually, even to the taking of physical inventories. True, the books were not closed, which required only the closing of the nominal accounts into profit and loss account, but if they had been, the accounting results would not have been different. A simple mathematical calculation was all that was necessary to determine the proportional part of the annual depreciation charge applicable to the period in question, and that has been correctly made on exhibits C and D. Surely, in the case of these two companies, net income is more clearly reflected by taking the actual net income of January and February and one half of the actual net income of March, than by a fractional part of the entire year's net income. Accordingly, we find that the net income of Mutual Refining and Northwestern, for the period in question, is $80,604.23 and $45,326.97, respectively.

In the case of Arizona, the situation is somewhat different. At the very outset we are confronted with petitioner's computation in Exhibit E showing a net loss of $39,010.31 for the 2½-month period in question, although the company had a net income of $187,905.41 for the entire year 1920. By the same sort of computation as was used in Exhibit E, the petitioner would necessarily arrive at a net income of $226,915.72 for the last 9½ months of 1920. It would seem that this distinctly unfavorable situation in the 2½-month period, as compared with the 9½-month period, requires some explanation before the result shown in Exhibit E could be accepted, but there is none in the record. Such a situation could result from any one, or a combination, of a number of factors, not the least of which would be any differential in gross profit ratio as between the two periods. Arizona is without the benefit of a 1920 inventory earlier than December 31 that would have enabled it to compute its net income for the 2½-month period as accurately as Mutual Refining and Northwestern; hence, for the purpose of the computation in Exhibit E, petitioner assumed constancy in Arizona's gross profit ratio

throughout the entire year and applied the year's average of 17.06 percent to the gross sales of the 2½-month period, to arrive at Arizona's gross profit for that period. It would be a startling coincidence, if in such a business as the marketing and jobbing of oil and accessories, the gross profit ratio did not vary as much as a decimal point throughout the entire year or, as one witness testified, throughout the two succeeding years; and the improbability of the fact is demonstrated by petitioner's own computation of the net income of Arizona's Chanute Refinery branch, which shows a gross profit ratio of 32.426 percent for the 2½-month period. Moreover, when an important factor necessary to the determination of net income, like inventory, is missing, so that resort must be had to some method of apportionment to determine the net income for a fractional part of a year, we believe it to be eminently more fair and conducive to a clear reflection of income to apply the apportionment to all factors that make up net income, to expenses as well as gross profit. By petitioner's computation in Exhibit E, about 13 percent of Arizona's gross profit for 1920 is allocated to the 2½-month period, though 20 percent of its expenses for the year are allocated to that period; and there is no justification in the record for the conclusion that that allocation approximates the realities of the situation. The Board has previously withheld its approval of the method used in Exhibit E for computing net income of a fractional part of a year, *J. Landis Shoe Co.*, 11 B. T. A. 42; affd., 34 Fed. (2d) 1020, and we see no good reason for adopting it here. As the record stands, we can not say that the respondent's apportionment is arbitrary or contrary to fact. Accordingly, we approve his determination of Arizona's net income for the period January 1 to March 15, 1920.

In respect of the matter of credit for taxes previously paid, the Board's earlier opinion contains these findings:

The * * * [petitioner], as aforesaid, filed its return for the calendar year 1920 including therein the income of the Mutual Oil Company of Maine, the Mutual Refining and Producing Company, the Northwestern Oil Refining Company and the Mutual Oil Company of Arizona and paid a tax thereon in the sum of $200,707.45. That no credit for such payment has been made by the respondent in arriving at the alleged deficiency in taxes for the period January 1, to March 15, 1920; that a certificate of overassessment in the sum of $12,779.97 has been issued to the * * * [petitioner] for the year 1920 which gave credit for said sum of $200,707.45, which certificate was protested by the * * * [petitioner] and its claim for refund has not been finally determined.

The petitioner contends that some portion of the $200,707.45 tax paid on the basis of the consolidated return is applicable to, and should be credited against, the tax liabilities of Arizona, Mutual Refining, and Northwestern for the period January 1 to March 15,

1920, thereby reducing the deficiencies in taxes of the three latter companies and the amount of petitioner's transferee liability in respect of those deficiencies. The question must be resolved adversely to petitioner, upon authority of *C. A. O'Meara et al.*, 11 B. T. A. 101; *Oilbelt Motor Co.*, 16 B. T. A. 831; *Robert Treat Hotel Co.*, 20 B. T. A. 968; *J. A. Folger & Co.*, 27 B. T. A. 1; *West Virginia Rail Co.* v. *Jewett Bigelow & Brooks Coal Co.*, 26 Fed. (2d) 503; and *Meyersdale Fuel Co.* v. *United States*, 44 Fed. (2d) 437; certiorari denied, 283 U. S. 860.

In the *Meyersdale Fuel Co.* case, *supra*, the taxpayer filed a consolidated return for 1920, which included the net income of three alleged subsidiary corporations, showing a total tax of $109,639. The taxpayer paid the tax shown to be due on the return, in part out of funds contributed by its alleged subsidiaries, and to the extent of $14,439 out of its own funds. The Commissioner held that the four companies were not affiliated and, having determined the tax liability of each on a separate basis—$13,600 in the case of the taxpayer, notified the latter of an overassessment. Later determinations by the Commissioner, the facts of which are not material here, resulted in credits and refunds being granted to the taxpayer in the total sum of $9,764. The taxpayer brought suit in the Court of Claims to recover the difference between the amount of the tax paid on the consolidated return and the total of the amount ($23,364) of such tax assignable to it upon the basis of its net income plus amounts previously credited and refunded to it. The court held that the taxpayer could not recover, stating "the plaintiff, under the facts, was not entitled to a refund of more than $838.65, being the difference between the tax of $14,439.47 paid by it on the consolidated return out of its own funds without reimbursement from the other corporations and the correct tax liability of $13,600.80." This decision of the Court of Claims with the other decisions cited above, lays down the rule that a corporate taxpayer which mistakenly joins with others in filing a consolidated return is entitled to credit for only such portion of the tax shown on the return as was actually paid by it either directly to the Government or through the medium of its parent company. The record does not show that Arizona, Mutual Refining, and Northwestern contributed anything to the payment of the tax paid on the consolidated return, and the fair inference to be drawn from the stipulated facts is that the petitioner paid the entire tax out of its own funds. No part of the tax paid on the consolidated return, therefore, may be credited to Arizona, Mutual Refining, and Northwestern in arriving at the deficiencies due from those companies.

*Decision will be entered under Rule 50.*