Transport Manufacturing & Equipment Company (a Delaware Corporation), Transferee v. Commissioner.
Transp. Mfg. & Equip. Co. v. Comm'r
Docket No. 74952.
United States Tax Court
T.C. Memo 1972-63; 1972 Tax Ct. Memo LEXIS 192; 31 T.C.M. (CCH) 262; T.C.M. (RIA) 72063; March 8, 1972, Filed *192 Guy A. Magruder, *193 Jr., for the petitioner. Daniel J. Boyer, for the respondent. FORRESTER
Supplemental Memorandum Opinion FORRESTER, Judge: On April 17, 1958, respondent mailed to Transport Manufacturing & Equipment Company (an Illinois Corporation and hereinafter referred to as Illinois) a statutory notice of deficiency stating that deficiencies and penalty aggregating $2,364,493.95 had been determined to be due from it for the taxable years 1949 through 1953. Illinois filed a timely petition for redetermination of that liability, and the ensuing proceeding was docketed as No. 74953 in this Court. Also, on April 17, 1958, respondent mailed to petitioner herein, Transport Manufacturing & Equipment Company (a Delaware Corporation), a statutory notice of deficiency stating that deficiencies and penalty aggregating $2,364,493.95 had been determined to be due from Illinois for the taxable years 1949 through 1953, for which amount, plus interest as provided by law, petitioner was liable as transferee of Illinois' assets. Petitioner filed a timely petition for redetermination of that transferee liability, and the ensuing proceeding was docketed as No. 74952 in this Court. Docket Nos. 74952 *194 and 74953 were consolidated for trial with several other related matters and trial was had in late 1961. On July 14, 1964, this Court filed a Memorandum Opinion which decided 39 issues presented at that trial. Riss & Co., Inc., T.C. Memo. 1964-190. On August 29, 1968, we filed a Supplemental Memorandum Opinion with respect to certain questions which had arisen in the Rule 50 computations for docket Nos. 74952 and 74953. Transport Mfg. & Equipment Co., T.C. Memo. 1968-189. In that second opinion we held, inter alia, that we had jurisdiction to determine petitioner's liability for interest accruing after the date of a jeopardy assessment. We entered decision in docket No. 74952 on December 5, 1968. Petitioner then petitioned to the United States Court of Appeals for the Eighth Circuit for review of that decision. On October 1, 1970, the Eighth Circuit filed an opinion which, with respect to docket No. 74952, decided only that the Tax Court was without jurisdiction to determine post-assessment interest. On that date, the Eighth Circuit vacated our decision of 263 December 5, 1968. However, on November 5, 1970, the Eighth Circuit entered an amended *195 judgment in which it remanded this matter to us - for recomputation of taxpayer's liability without consideration of post-assessment interest. In these proceedings on remand petitioner raises three questions which we must now resolve. 1. Validity of Jeopardy Assessment of September 14, 1960 On September 30, 1960, long before the original trial, respondent filed in this case a notice of jeopardy assessment which notice read in pertinent parts as follows: TRANSPORTATION [sic] MANUFACTURING & EQUIPMENT COMPANY (a Delaware corporation), Transferee, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent. Docket No. 74952 NOTICE OF JEOPARDY ASSESSMENT THE RESPONDENT, pursuant to Section 6861 (c) of the Internal Revenue Code of 1954, notifies the Court that subsequent to the filing of the petition herein and on his September 14, 1960 list, he assessed against the petitioner in the above-entitled case the deficiencies in income tax, plus interest thereon computed to the date of assessment, together with the additions to the tax for fraud, in the following amounts: *13 Deficiencies
Additions
to the Tax
Income
I.R.C. 1939,
Year
Tax
Sec. 293(b)
Interest
1949
$139,184.54
$ 87,676.73
1950
268,941.19
153,278.06
1951
343,411.53
175,116.36
1952
599,259.08
269,625.53
1953
645,773.63
$367,923.98
251,807.48
*196 The above-quoted text was identical to the text of a notice of jeopardy assessment filed on the same day in docket No. 74953, nevertheless, petitioner argues that the record, as it stands now, shows that petitioner was jeopardy assessed on September 14, 1960, for its own "deficiencies in income tax" plus liabilities incident thereto and not for liabilities arising out of its status as transferee of Illinois' assets. There are numerous cases which point out that a party's transferee liability for the income taxes of the transferor is separate and distinct from that party's primary liability for its own income taxes. E.g., hulburd v. Commissioner, 296 U.S. 300 (1935) (legatee); Continental Oil Co. v. Helvering, 100 F. 2d 101 (C.A.D.C. 1938); affirming 34 B.T.A. 29 (1936) (limitations and refunds); Sol Jacobs, Jr., 45 T.C. 133 (1965) (transferor corporation's liability for pension transferred); Estate of Samuel Stein, 40 T.C. 275 (1963), (can't consider personal right of transferee to a "restoration" credit); J. V. Vandenberge, 3 T.C. 321 (1944), affd. 147 F. 2d 167 (C.A. 5, 1945), certiorari *197 denied, 325 U.S. 875 (1945) (we have no jurisdiction to allow transferee (personally) to offset); Edward Michael, 22 B.T.A. 639 (1931), affd. 75 F. 2d 966 (C.A. 2, 1935), certiorari denied, 296 U.S. 579 (1935) (fact that transferee, personally, had previously litigated same year, is no bar). Furthermore, it has been held that where a petitioner has instituted a redetermination proceeding on the basis of a notice of transferee liability, the Commissioner may not amend his answer in order to transform the proceeding into one for the redetermination of the petitioner's own tax liability. Milk Bottle Exchange, Inc., 43 B.T.A. 33 (1940). It also seems clear, as both respondent and petitioner here agree, that an assessment against petitioner in respect of its own income tax liability would not be the same as an assessment against petitioner in respect of its transferee liability. In reliance upon these general propositions and on this state of facts petitioner argues that "the [jeopardy] assessment against petitioner was not an assessment of transferee liability but, instead, was a purported assessment of primary tax liability. *198 " It then concludes that the jeopardy assessment of September 14, 1960, was not a valid assessment of transferee liability and that, therefore, the assessment "is not justiciable in this cause." We find ourselves unable to adopt petitioner's reasoning. Whether we look to section 273(c) of the 1939 Code or section 6861(c) of the 1954 Code, [1] the language relating to our jurisdiction with respect to the 264 redetermination of amounts which have been jeopardy assessed is the same. For example, section 6861(c) of the 1954 Code provides in pertinent part that: The Secretary or his delegate shall notify the Tax Court of the amount of such assessment * * * if the petition is filed with the Tax Court before the making of the assessment or is subsequently filed, and the Tax Court shall have jurisdiction to redetermine the entire amount of the deficiency and of all amounts assessed at the same time in connection therewith. The above-quoted sentence (or the corresponding sentence from section 273(c) of the 1939 Code) is a compound sentence stating in two separate and independent clauses two separate and independent consequences of a jeopardy assessment. One consequence is that the *199 Secretary or his delegate (or the Commissioner under the 1939 Code) "shall notify" the Tax Court of the jeopardy assessment. The other consequence is that this Court - shall have jurisdiction to redetermine the entire amount of the deficiency and of all amounts assessed at the same time in connection therewith. The act of jeopardy assessment is thus quite different from the act of notification. It is the act of jeopardy assessment which gives this Court the jurisdiction to redetermine amounts which have been jeopardy assessed. The act of notification merely follows the act of jeopardy assessment. We reject petitioner's argument insofar as it equates the act of jeopardy assessment with the act of notification. Petitioner would ascribe more "potency" to the notification requirement than it deserves. See Erickson v. United States, 309 F. 2d 760, 766 (Ct. Cl. 1962). While the statute requires that this Court be notified of relevant jeopardy assessments, it fails to describe the effects of respondent's submission of a notification which is not in correct form. We conclude that, whatever else may occur, this Court shall retain its jurisdiction to determine all amounts *200 assessed in connection with a jeopardy assessment so long as the underlying jeopardy assessment is in proper order. [2]
However, since it is a fundamental principle that lack of jurisdiction of the subject matter cannot be ignored by any court and since petitioner so strongly challenges the validity of the jeopardy assessment which would be the basis of such jurisdiction, we issued an "ORDER" on February 2, 1972, which provided: That petitioner shall be afforded the opportunity to present to this Court on or before March 2, 1972, a copy of * * * summary record of jeopardy assessment (or the pertinent parts thereof) together with applicable supporting records. We afforded petitioner this opportunity so that it could make an offer of proof with respect to its *201 position that the jeopardy assessment of September 14, 1960, was invalid. Pursuant to that order petitioner filed with this Court on February 23, 1972, a "PRESENTATION OF ASSESSMENT RECORDS" to which two documents were attached. One document was a copy of an "Assessment Certificate" (Form 23C (Rev. 11-58)) which on its face purports to be a "Summary Record of Assessments" for September 14, 1960. The other document was a copy of an "Assessment List" (Form 23-E (Rev. 2-59)) which on its face we read as showing that "Transport Mfg. & Equip. Cor. (a Delaware Corp.) Transferee" (emphasis supplied) was assessed for amounts identical to those listed on respondent's "NOTICE OF JEOPARDY ASSESSMENT" filed September 30, 1960, and also headed "Transportation Manufacturing & Equipment Company (a Delaware corporation), Transferee." Upon examination of these two documents we are unpersuaded that, if admitted into evidence, they would establish that the jeopardy assessment of September 14, 1960, was not a valid assessment of petitioner's transferee liability for the asserted income taxes, addition thereto and interest thereon, of its transferor. Consequently, we are satisfied that the jeopardy *202 assessment of September 14, 1960, was a valid assessment of petitioner's transferee liability for the asserted liabilities of its transferor, and we hold that we have jurisdiction to redetermine all such amounts. 2. Scope of Paragraph 16 of the Pretrial Stipulation In paragraph 16 of the pretrial stipulation the parties stipulated that: 265 T.M. & E. of Delaware, petitioner in Docket No. 74952, is liable as transferee of the assets of T.M. & E. of Illinois for any deficiencies in income taxes and additions to the tax, plus interest thereon as provided by law, which may be found by this Court to be due and owing from the said T.M. & E. of Illinois, petitioner in Docket No. 74953, for the taxable years 1949 to 1953, inclusive. Petitioner argues (as he recognizes that he argued in the prior Rule 50 hearing) that paragraph 16 of the pretrial stipulation did not relieve respondent of the burden to prove certain facts which respondent would otherwise have been obliged to prove under Section 6902(a) of the 1954 Code. In particular he urges that the stipulation did not relieve respondent of the burden to prove that petitioner was liable as transferee for interest which was assessed *203 at the same time in connection with the purported jeopardy assessment of September 14, 1960. In the prior Rule 50 dispute we stated and expressly decided that the stipulation removed the burden which section 6902(a) of the 1954 Code placed on respondent. The Eight Circuit's subsequent review of our decision left that ruling unchanged. Furthermore, the Eight Circuit limited these proceedings on remand to a recomputation, the scope of which does not encompass, reconsideration of our prior interpretation of the stipulation. But, even if we were to reconsider our prior interpretation, we have no new bit of fact, or of law, which would persuade us to change that interpretation. We resolve this second question in respondent's favor. 3. Amount of Overpayment In the case of income taxes, the liability of a transferee of a taxpayer shall, in general, be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the income taxes with respect to which the liability was incurred. Sec. 311(a), 193913 I.R.C.; sec. 6901(a), 1954 I.R.C.[3] The provisions of the respective Codes made applicable to a transferee's liability by section *204 311(a) of the 1939 Code or by section 6901(a) of the 1954 Code include the provisions relating to filing of petitions before this Court, to assessments, to collections, and to refunds. See sec. 39.311-1(a), Regs. 118; sec. 301.6901-1(a)(3), Proced. & Admin. Regs. In particular, our jurisdiction to determine overpayments is delineated in either section 322(d) of the 1939 Code or section 6512(b)(1) of the 1954 Code. Insofar as is relevant to this case the substance of the pertinent provisions of those sections is the same. Thus, section 6512(b)(1) of the 1954 Code sets out our jurisdiction to determine overpayments by providing that if this Court - finds that there is a deficiency but that the taxpayer has made an overpayment of such tax, the Tax Court shall have jurisdiction to determine the amount of such overpayment * * * Both petitioner and respondent agree that subsequent to April 17, 1958, petitioner made to respondent at least 100 separate payments totaling $1,655,836.45 to be applied *205 against petitioner's transferee liability. In docket No. 74953 we determined that there were deficiencies in the transferor's tax totaling $890,927.64 as follows: Income
tax
Assessed
Additions
Year
deficiency
interest
to tax
1949
$ 58,777.58
$ 37,025.85
0
1950
104,090.69
0
0
1951
104,473.18
0
0
1952
236,124.19
0
0
1953
333,748.71
0
$16,687.44 Therefore, as docket No. 74953 was eventually affirmed by the Eighth Circuit on November 5, 1970, and as the parties have stipulated that petitioner is liable as Illinois' transferee for amounts which may be found due and owing in docket No. 74953, petitioner is liable as transferee to the extent of at least $890,927.64. Petitioner asks that we determine that it has made an overpayment to respondent of $764,908.81 ($1,655,836.45, constituting total payments, less $890,927.64, constituting Illinois' primary liability as computed in docket No. 74953). Respondent, on the other hand, has apparently applied the payments of $1,655,836.45 partly to the liability of $890,927.64 as redetermined in docket No. 74953, partly to interest which was assessed at the same time in connection with the *206 jeopardy assessment of September 14, 1960, as well as (in part) to interest accruing after such jeopardy assessment (so-called post-assessment interest). In his brief, respondent has 266 described his accounting procedure as follows: When the respondent receives advanced payments of liability from taxpayers, it is necessary for him to account on his books for these payments in some orderly manner. If an advanced payment is made by a taxpayer after a notice of deficiency has been mailed, the assessment of that payment will be made consistently with any designation of the payment as to tax and interest made by the taxpayer. Rev. Proc. 64-13, 1964-1 (Part 1) Cum. Bull. 674. When a designation is not made by the taxpayer, the payments will be applied to tax, then to penalty and finally to interest for the earliest year and in a similar manner for all subsequent years. Rev. Rul. 58-239, 1958-1 Cum. Bull. 94. There is no evidence in the record that the petitioner made any specific designation as to how the respondent should apply the payments that were received from petitioner. Accordingly, these payments have been applied by the respondent first to petitioner's *207 liability for the deficiencies due from the transferor, then to petitioner's liability for the assessed interest due from the transferor, and finally to its liability for interest accruing upon the assessed interest and deficiencies. The respondent has, therefore, properly applied part of petitioner's payments, totaling $220,471.09 to petitioner's liability for post-assessment interest. The Eighth Circuit has specifically deprived the Tax Court of jurisdiction to find that there has been an overpayment of this post-assessment interest. The upshot of the difference between the parties' accounting methods is that petitioner's computations produce total overpayments which are quite a bit larger than the total overpayments computed by respondent. As a preliminary to our selection between the two accounting methods, it may be helpful to show that our jurisdiction to determine overpayments necessarily includes the power to examine the underlying accounting methods employed by the parties. Before we can determine that there has been an overpayment we must not only make determinations of petitioner's liability, but we must also decide which of, and to what extent, petitioner's payments *208 were made in respect of those liabilities. We must also remember that the only liabilities we may redetermine are those which Congress has given us jurisdiction to redetermine. Similarly, we must bear in mind that we are without jurisdiction to determine that petitioner had made an overpayment in respect of a liability which we are without jurisdiction to redetermine. Thus, if petitioner made a payment in respect of its liability for its own income tax or if it made a payment in respect of its liability as transferee of Illinois' assets for some amount (such as post-assessment interest) which we have no jurisdiction to redetermine, we would be without jurisdiction to consider any of such payments in determining whether petitioner had made an overpayment in this case. A simple example may help to illustrate the operation of the foregoing propositions. Suppose that we were to determine that petitioner was liable as transferee for a deficiency of $60 in Illinois' income tax, for additions of $20 to Illinois' income tax, and for interest of $10 assessed at the same time in connection with a jeopardy assessment of petitioner's transferee liability. Suppose further that we were to conclude *209 from the evidence presented that petitioner had made, as transferee, total payments of $200 of which $110 had been made in respect of Illinois' income tax deficiency, $40 had been made in respect of additions to Illinois' income tax, $20 had been made in respect of interest assessed at the same time in connection with the jeopardy assessment of petitioner's transferee liability, and $30 had been made in respect of interest accruing after such jeopardy assessment (so-called post-assessment interest). Then, our determination for purposes of our decision would be limited to finding that petitioner, as transferee, had made an overpayment of $50 in respect of Illinois' income tax deficiency, an overpayment of $20 in respect of additions to Illinois' income tax, and an overpayment of $10 in respect of interest assessed at the same time in connection with the jeopardy assessment of petitioner's transferee liability. Even though it would have been necessary to our decision to calculate that $30 of the $200 payment had been made in respect of postassessment interest, we would have been without jurisdiction to make a determination that any part of such $30 was an overpayment in respect of that *210 post-assessment interest. Here, it appears that petitioner and respondent are in substantial accord as to the amount of petitioner's liabilities in respect of Illinois' income tax deficiency, in respect of additions to Illinois' income tax, and in respect of interest assessed at the same time in connection with the jeopardy assessment of petitioner's transferee liability. 267 They are also in substantial accord as to the total amount of payments petitioner has made in respect of its liability as transferee of Illinois' assets. What appears to be in dispute between the parties is the question of proper apportionment of those payments, that is, what portion of those payments did petitioner make in respect of liabilities which we have jurisdiction to redetermine and what portion of those payments did petitioner make in respect of post-assessment interest, a liability which we have no jurisdiction to redetermine? In order to resolve the dispute between the parties and in order to exercise properly our jurisdiction, we must look to each of petitioner's 100 payments and we must decide what portion of each payment petitioner made in respect of the liabilities which we have jurisdiction *211 to redetermine. Contrary to one of respondent's assertions, we do not have the concomitant power to scrutinize respondent's accounting methods where those methods fail to reflect (in such manner as might affect our ultimate determinations of overpayment) the tenor of the various payment transactions. E.g., Rosenman v. Commissioner, 323 U.S. 658 (1945); see also, e.g., Thomas v. Mercantile Nat. Bank at Dallas, 204 F. 2d 943 (C.A. 5, 1953); Estate of Samuel Stein, 40 T.C. 275 (1963); George H. Jones, Executor, 34 B.T.A. 280, 283 (1936). Unfortunately for petitioner, the simplicity of its accounting approach ignores much of the apportionment that had occurred long before these proceedings on remand and which has been left undisturbed by the Eighth Circuit in its opinion and ultimate judgment of 1970. In the first place petitioner itself recognized in its computation for entry of decision in the first Rule 50 hearing that it had made some portion of its payments in respect of interest assessed at the same time in connection with the jeopardy assessment of September 14, 1960, as well as in respect of interest accruing after that date. *212 Furthermore, on December 3, 1968, the parties filed a stipulation regarding the apportionment of $605,491.43 of payments made at various dates in 1967 and 1968. That stipulation indicated that petitioner had made substantial portions of those payments in respect of interest assessed at the same time in connection with the jeopardy assessment of September 14, 1960, as well as in respect of post-assessment interest. We will not now disrupt that stipulation. And, at the first Rule 50 hearing petitioner did, in fact, raise an objection to respondent's apportionment of a $258,000 payment. We approved respondent's apportionment and on appeal the Eighth Circuit left that ruling unchanged. In view of the limited scope of these proceedings on remand and in consideration of orderly judicial procedure it is our conclusion that now is not the time to change either that express ruling or our implicit rulings (as embodied in our December 5, 1968, decision herein) concerning the apportionment of the scores of other payments which petitioner had made in respect of its transferee liability. In reaching this conclusion we have borne in mind the Eighth Circuit's mandate which stated that: This matter *213 is remanded to the Tax Court for recomputation of taxpayer's liability without consideration of postassessment interest. That mandate would seem to require us to return to our decision of December 5, 1968, and to revise it in order to eliminate any reference to, or finding of, liability for (or overpayment of) interest accruing after September 14, 1960, the date of the jeopardy assessment herein. Respondent has submitted a proposed decision which revises our decision of December 5, 1968, by eliminating all reference to, or finding of, liability for (or overpayment of) interest accruing after September 14, 1960. We intend to adopt respondent's proposed computations and decision as our own. We do recognize that since December 5, 1968, (the date of our first decision herein) petitioner has made 16 payments totaling $56,000. Respondent apparently, and perhaps rightly so, has not considered these payments in his proposed decision herein. We believe that under the Eighth Circuit's mandate we would be required to consider these payments in our final computations and decision if any portion thereof were made in respect of the liabilities determined herein. Therefore, we will entertain *214 petitioner's timely motion to present evidence on the narrow factual issue of the proper apportionment of these payments of $56,000 if it and respondent are unable to agree on such apportionment. It is regrettable that the issues decided here and in prior related proceedings have consumed such an inordinate amount of the time of the parties and of this Court, 268 particulary in view of the voluminous record which must be reviewed each time the parties reach a new stalemate. We express the hope that the parties will be able to reach the agreement indicated above. Decision will be entered in accordance with the foregoing. Footnotes
1. Because of the virtual identity of the pertinent provisions of sec. 273(c), 1939 I.R.C., and sec. 6861(c), 1954 I.R.C., we need not, and do not, decide which is the applicable provision for the purposes of this case. However, see sec. 7851, 1954 I.R.C.↩
2. We remark that there is no question that petitioner has in any way been misled by the inaccuracy of respondent's notification. Through the related proceedings in Transport Manufacturing & Equipment Co. of Del. v. Trainor, 382 F. 2d 793↩ (C.A. 8, 1967), and until now in this case, petitioner at all times treated the notice of September 30, 1960, as a notice of jeopardy assessment of transferee liability.
3. Because of the close similarity of the petinent provisions of the 1939 Code and the 1954 Code we need not, and do not, decide which of the two Codes to apply. See footnote 1, supra.↩